# Kifer *v.* Yoder.

*Brokers—Commissions—Sale.*

It is always incumbent upon a broker seeking to recover a commission, to prove either that a sale was made to the party whom he procured as a purchaser, or that the purchaser was able and willing to buy, and the failure to make an actual sale was through no fault of the broker or his customer.

If the services of the broker, whatever they be, fail to accomplish a sale, and many months after the proposed purchaser has decided not to buy, he is induced by other persons to reconsider his resolution, and then makes the purchase as the consequence of such secondary or supervening influence, the broker has no right to a commission.

Argued Oct. 31, 1900. Appeal, No. 160, Oct. T., 1900, by defendant, from judgment of C. P. No. 1, Allegheny County, Dec. T., 1899, No. 563, on verdict for plaintiff in case of James Kifer v. L. T. Yoder. Before McCollum, C. J., Mitchell, Fell, Brown, Mestrezat and Potter, JJ. Reversed.

Assumpsit by broker to recover commissions. Before Stowe, P. J.

The facts appear by the opinion of the Supreme Court.

Verdict and judgment for plaintiff for $2,867.20. Defendant appealed.

*Errors assigned* were (1, 2) refusal of two points quoted in opinion of the Supreme Court.

*D. F. Patterson*, with him *H. L. Christy*, for appellant.

*Charles A. O'Brien*, with him *Charles W. Ashley*, and *John G. Mac Connell*, for appellee, cited: Keys v. Johnson, 68 Pa. 43; Reed v. Reed, 82 Pa. 420; Gibson's Est., 161 Pa. 177.

Opinion by Mr. Justice Potter, January 7, 1901:

The plaintiff brought his action in assumpsit, to recover a commission as broker, for the sale of the stock which the defendant owned and controlled, in the West Penn and Apollo Gas Companies. In his statement of claim, he declared upon

an express contract for a sale actually made, of the property, for the sum of $140,000, to the American Natural Gas Company, upon which his commission was two per cent, or $2,800.

The defense admitted an agreement to pay the plaintiff the amount claimed, provided he effected a sale. It was admitted also that the plaintiff brought about negotiations in the spring of 1897 with Mr. Wittmer, president of the American Natural Gas Company, but these negotiations were fruitless and fell through. The defendant denied making a sale to this party, but averred that more than two years later, the properties were sold to A. M. Neeper, Esq., who in turn made a sale to the American Natural Gas Company.

During the trial, the defendant by his second point, asked the court to charge the jury as follows: "If the jury believes that no sale was actually made by the plaintiff of the West Penn and Apollo Gas Companies' properties to the American Natural Gas Company, the verdict should be for the defendant." The refusal of this point by the court below is the first specification of error.

It is always incumbent upon a broker seeking to recover a commission, to prove either that a sale was made to the party whom he procured as a purchaser, or that the purchaser was able and willing to buy, and the failure to make an actual sale was through no fault of the broker or his customer. In this case the plaintiff declared upon an actual sale, and the first inquiry therefore, was as to whether or not the sale was made through the instrumentality of the plaintiff. The evidence, is that although the attention of Mr. Wittmer was first called to the property by the plaintiff, yet after investigation at that time, which was the spring of 1897, he declined to purchase; and all negotiations with him were abandoned for several months. Nor was the purchase finally made for nearly two years and a half, in October, 1899, and then through other parties bringing the property to his notice, and not as the purchaser says, in consequence of anything done by the plaintiff; but by reason of information which he obtained concerning the property, from outside parties, and through negotiations conducted by Mr. Neeper. Mr. Wittmer was certainly the best witness as to the cause and manner of his purchase, and he testifies as follows: " Q. From whom did you make this purchase? A. From Mr.

Neeper. Q. You stated yesterday that you had been brought into communication with Mr. Yoder by the plaintiff, Mr. Kifer? A. Yes, sir. Q. And when you were brought into communication with him what negotiations did you have? A. We looked over the plant and couldn't agree on terms and turned it down as we call it; quit. Q. They offered the property to you at so much, and did you take that or decline it? A. We declined it. Q. Can't you tell us when that was? A. That was in the early part of 1897."

He states further that the matter came up a little later on, perhaps six months or maybe a year, when they again failed to agree on the terms, and turned it down. After that time, he states that the plaintiff never presented another proposition from Mr. Yoder. He testifies that in the fall of 1899 he met Mr. Kifer on the bridge and asked if he still had this property for sale, and that Mr. Kifer said, "He would see." There was nothing in this testimony, to show that the service performed by the plaintiff, was the immediate and efficient cause of the sale. If his introduction of the parties had resulted in a sale, then his commission would have been earned; but there is nothing in the evidence to justify that conclusion. The case falls clearly in line with the decision in Earp v. Cummins, 54 Pa. 397, where it is said: "But if the services of the broker, whatever they be, fail to accomplish a sale, and several months after the proposed purchaser has decided not to buy he is induced by other persons to reconsider his resolution and then makes the purchase as the consequence of such secondary or supervening influence, the broker has no right to a commission."

We think under the facts in this case the question of whether or not a sale was actually made by the plaintiff, was clearly in issue, and if so, the defendant was entitled to the instruction prayed for in his second point. The first assignment of error is therefore sustained.

The defendant further requested by his third point that the jury should be instructed as follows: "If the jury believes that A. M. Neeper, Esq., was a bona fide purchaser of the stock of the West Penn and Apollo Gas Companies in November, 1899, without any agency of plaintiff therein, and that Mr. Neeper sold to the American Natural Gas Company without the agency of the plaintiff, and that at Mr. Neeper's request for conven-

ience and saving of expense of stamps, the deeds for the property of said companies were made by them respectively to the American Natural Gas Company, the verdict should be for the defendant."

This point was also refused, and the action of the court therein is made the subject of the second assignment of error. Here again the facts of the case seem to justify the instruction requested. The plaintiff was claiming commissions under an express contract, upon a sale actually made by him to the American Natural Gas Company. The evidence upon the part of the defense was that the sale was not made by the defendant to this company, but was made to Mr. Neeper, who afterwards sold to the gas company. Mr. Neeper testifies as follows: " Q. Had Mr. Kifer anything, to do with bringing about that sale ? A. No, sir. I didn't know Mr. Kifer; never met him, never saw him until Monday of this week. Q. Had he anything to do with bringing about either sale, either the sale from Vandersall and Yoder to you or from you to the gas company? A. Not in the slightest degree. Q. Was there anything in this transaction different from what appears on its face ; in other words was it a bona fide sale to you ? A. Certainly."

If this evidence was believed by the jury, then clearly they could not find that the plaintiff caused the sale, or that his agency was the immediate and efficient cause of the sale. The only conclusion to which they could come, if they believed the testimony, was that the sale to the American Natural Gas Company, was due to a distinct and separate cause, namely, the efforts of Mr. Neeper. The point should have been affirmed without qualification. The second assignment of error is therefore sustained.

Much emphasis was placed upon the theory of the plaintiff, that his agency was continuous for some two years and a half, and up to the time of the final sale. His own evidence however does not substantiate the claim. There is nothing to show that any negotiations were pending between the plaintiff and Mr. Wittmer in October, 1899, when they met upon the bridge, nor had there been any for months past. When asked by Mr. Wittmer at that time, if he still had the property for sale, he made no assertion of any continuing agency, but said " He would see." And then according to his own statement, when he went

to Mr. Yoder to see if he would still be allowed to make the sale, he was told squarely by Mr. Yoder that he could not do so, for the reason that Mr. Neeper had taken up the matter and was working upon it. This answer of plaintiff to Mr. Wittmer, was inconsistent with the theory of a continuing agency, urged at the trial.

Under the view of the case indicated, it is not necessary to consider the other assignments of error in detail. A real estate broker is employed as the agent of the vendor, for the purpose of effecting a sale. Until he accomplishes the object of his employment he is not entitled to his commission. Under the evidence as it stands in this case, a finding by the jury that the plaintiff might have made a sale, if not interfered with, would be purely speculative.

The judgment is reversed and a venire facias de novo is awarded.