## Brodhead *v.* Pullman Ventilator Company, Appellant.

*Principal and agent—Agent's commissions—Bringing parties together.*

Where a corporation employed an agent to solicit orders for the company's goods, and to further the company's interests in exploiting its products for which services he was to receive a commission on all orders received through his efforts in exploiting the goods, the agent is entitled to his commissions where he secures a promise from an intending purchaser to consider a proposition from the company, notifies the company of this fact, and the order is subsequently secured without the agent's further intervention, through the officers of the company.  In an action for such commissions, where the agent has made out a prima facie case, it must be submitted to the jury, although there is evidence that another party than the plaintiff had previously called the company's attention to the business.

*Principal and agent—Receipt—Evidence.*

In an action by an agent against his principal to recover commissions,

## 20   BRODHEAD *v.* PULLMAN VENTILATOR CO., Appellant.

Syllabus—Statement of Facts.   [29 Pa. Superior Ct.

a receipt signed by the agent will not estop him from recovery, where there is no evidence whatever that the sum for which the suit was brought was due at the date of the receipt.

*Principal and agent—Commissions—Evidence.*

In an action by an agent against his principal to recover commissions on an order alleged to have been secured by him, where the plaintiff makes out a prima facie case, and the defendant introduces evidence tending to show that another agent had secured the order before the plaintiff, evidence that such other agent had been paid for securing the order is immaterial, and may be rejected.

Argued Dec. 9, 1904.   Appeal, No. 152, Oct. T., 1904, by defendant, from judgment of C. P. No. 5, Phila. Co., March T., 1903, No. 4056, on verdict for plaintiff in case of Richard Brodhead v. The Pullman Automatic Ventilator Company.   Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ.   Affirmed.

Assumpsit for commissions.   Before MARTIN, P. J.

The facts appear by the opinion of the Superior Court.

At the trial Samuel H. Jacobson was asked this question: " Q. What became of this order ?   Did you take that order ?   A. I dictated the letter, and understood it was signed by the secretary of the Produce Exchange, and, as a result of obtaining that order, I forwarded the dimensions of the boards that were required to make that installation to the factory at York, Pa.   Q. Was that order filed ?   A. It was.   Q. And were you paid your compensation for securing that order by the Pullman' Automatic Ventilator Company ? "

Objected to.   Objection sustained.   Exception for defendant. [1]

Plaintiff was asked this question : " Q. Did you have a conversation with William Rufus Reitzell, general manager of the Pullman Automatic Ventilator Company, in relation to this paper ?   (Witness shown agreement of August 9, 1902.)   A. I did, sir.   Q. When was that ?   A. It was perhaps two weeks after the execution of that contract at York, the conversation took place at Broad Street Station.   Q. Philadelphia ?   A. Yes sir.   Q. What was said ?   A. I called Mr. Reitzell's attention to the wording of that contract."

Mr. Nichols objects to the introduction of this written

agreement by conversation between the witness and Mr. Reitzell two weeks after the contract was made.

Mr. Simpson: I propose to show that the man who signed it and this man both gave it an interpretation which Mr. Nichols claims the contract does not show.

Objection overruled. Exception for defendant. [2]

" A. I called Mr. Reitzell's attention to that contract, to the phraseology of that contract, and stated to him it might be construed against me as a final settlement and including my claim on the Produce Exchange order, and I then requested Mr. Reitzell, in order to keep the record straight, and in ac-·cordance with our distinct previous understanding, that he interline or add a line to it that the above agreement did not contemplate the Produce Exchange matter. He then said to me, ' I am taking a train, it is inconvenient to write, but I will give you my word that does not interfere with or in any way relate to the claim on the order secured from the Produce Exchange.' "

Defendant presented this point:

6. Under the terms of the contract of February 4, 1902, Brodhead's compensation was not earned by merely bringing the defendant company and the Produce Exchange authorities together. *Answer:* Affirmed; but I will add, if Brodhead brought them together, and the sale was subsequently consummated, and the ventilators were placed in the Produce Exchange by reason of the fact that he brought them together, he would be entitled to his commissions. [3]

8. Under all the testimony in this case the verdict must be for the defendant. *Answer:* Refused. [4]

Verdict and judgment for plaintiff for $1,146.08. Defendant appealed.

*Errors assigned* were (1, 2) ruling on evidence; (3, 4) above instructions, quoting them.

*H. S. Prentiss Nichols*, with him, *Joseph de F. Junkin*, for appellant.—This case does not present facts such as give rise to the rule that when a broker brings the parties together, his duty has been performed and his compensation has been earned. The man who secured the order was not brought into contact

with the Produce Exchange by Brodhead, or through anything that he had done, or notice that he had given: Creveling v. Wood, 95 Pa. 152; Earp v. Cummins, 54 Pa. 394; Keys v. Johnson, 68 Pa. 42; Kifer v. Yoder, 198 Pa. 308.

*Alex. Simpson, Jr.*, for appellee.

OPINION BY RICE, P. J., October, 19, 1905:

This action of assumpsit was brought to recover a commission of twenty per cent upon $5,200, the price received by the defendant for supplying ventilators to the New York Produce Exchange and installing the same in its building. The plaintiff claims this commission under the written contract to which we shall presently refer. At the conclusion of the evidence the defendant requested the court to give binding instructions in its favor. This was refused. The defendant also requested the court to charge that under the terms of the agreement the commission was not earned by merely bringing the defendant and the authorities of the Produce Exchange together. This point was affirmed but the court added: "If Brodhead brought them together, and the sale was subsequently consummated, and the ventilators were placed in the Produce Exchange by reason of the fact that he brought them together, he would be entitled to his commissions." The refusal to give binding instructions and the foregoing answer to the defendant's sixth point (third assignment) are the principal matters assigned for error. The questions thus raised will be considered together.

By written agreement made in February, 1902, the plaintiff became the special agent of the defendant with headquarters in New York state; he agreeing to solicit orders for the company's ventilators, and generally to render such services as would further the company's interests by "exploiting said Pullman ventilator" in New York and the territory in proximity thereto, to exert himself to the utmost in furthering the business of the company, to exercise full and proper diligence in carrying out the details of said business, and to render an account regularly and as often as demanded of all work done and results accomplished by him. For his services he was to receive a compensation, we quote from the agreement, "equal to 20% of the

standard price-list on all orders for ventilators secured by said party of the second part, or on such orders as may have been secured at his, the said party of the second part's personal instance, as well, on all orders accruing, directly, from the efforts of the said party of the second part in exploiting said Pullman ventilator in and for the said territory."

The plaintiff testified, that in the latter part of April, 1902, he learned from a friend, who was a member of the New York Produce Exchange, that the exchange proposed to install a system of ventilation in its rooms; that he received from this friend a copy of a circular letter which the secretary of the exchange had sent to the several members calling upon them to vote aye or nay upon a ventilation proposition therein set forth; that acting upon the information thus received the plaintiff called upon the secretary of the exchange, who referred him to the chairman of the committee having the matter in charge; that he then went to Mr. Kneeland, the chairman of the committee and after some preliminary conversation obtained from him a promise to consider a proposition from the defendant company; that immediately after these negotiations he wrote to the vice-president of the company at its general office in Washington, D. C., calling the attention of the company to the importance of the business, and to its magnitude, and requesting, as it was somewhat out of its line of business in New York, that he be given instructions as to the details of the proposition to be made. He inclosed in his letter the circular letter above referred to. This letter, which was the first information the company had of the intention of the Produce Exchange to install a system of ventilation, was referred to the directors of the company, and on the same day Mr. Hauk, the vice-president of the company, wrote to Mr. Kneeland as follows: "Dear Sir :— We are in receipt of a letter to-day from our representative in New York, Mr. Richard Brodhead, calling attention to the subject now before you (the ventilation of the main room of the Exchange). Mr. Brodhead requests us to send you the approximate cost of equipping the main room, and other data in connection therewith. Permit me to say that the writer expects to be in New York on Wednesday or Thursday of this week, and while there hopes to have the pleasure of calling upon you, and will then

take up the matter with you personally, at which time he will give you the information required." He also wrote to the plaintiff on the same day as follows, and inclosed a copy of his letter to Mr. Kneeland : "Dear Mr. Brodhead :— We enclose you a copy of our letter written to Mr. Kneeland. Hope to see you in New York personally, on Wednesday or Thursday of this week." It does not appear that the vice-president met the chairman of the exchange committee at the time indicated in his letter, or at any other time ; but it does appear in the testimony of the defendant's witness, Jacobson, that on the 8th and 9th of May he, Jacobson, being then the general manager of the company's business in several states including New York, met the committee. Upon cross-examination he admitted that at one of these meetings the president of the company was present, and while he said he thought it was at the meeting of the 9th, he was unable to say that it was not at the first meeting. He does not say that the president went with him at his request or in consequence of any information he gave him. The fact that the president appeared before the committee so soon after the plaintiff's communication was received and laid before his board of directors is significant. At any rate a proposition was made which the committee accepted on the ninth, and pursuant to the contract between the defendant and the Produce Exchange the ventilators were installed.

It is claimed by the defendant that the plaintiff was not diligent ; but we fail to see wherein he was not. He acted promptly in opening negotiations with the proper officers of the exchange as soon as he had received the information from his friend, and he was prompt in communicating the result of his negotiations to the company and in furnishing the information necessary for the latter's guidance. The fact that he did nothing further in the few days that intervened before the making of the contract is amply explained upon other grounds than lack of diligence by the two letters above quoted. Under the circumstances he was justified in waiting until the vice-president or some other representative of the company came on, or the instructions he requested were forwarded to him.

The cases cited by the defendant's counsel do not sustain their contention that binding instructions ought to have been given. The point decided in Earp v. Cummins, 54 Pa. 394, and

Kifer v. Yoder, 198 Pa. 308, that if the services of a broker failed to accomplish a sale, and several months after the proposed purchaser has decided not to buy, he is induced by other persons to reconsider his resolution and then makes the purchase as the consequence of such secondary or supervening influence, the broker has no right to a commission. But if the testimony of the plaintiff in the present case is to be credited, his efforts had not failed and it is not a fact which the court would have been warranted in declaring as conclusively established that the Produce Exchange had decided not to deal with the defendant. Grant that the facts testified to by the defendant's witness, to which we shall refer hereafter, would bring the case within the principle of these cases, it was still for the jury, and not for the court, to determine whether the facts existed. In Creveling v. Wood & Leman, 95 Pa. 152, the plaintiffs were agents to sell under a special agreement. The sales contemplated in the agreement were actual sales in a commercial sense, not mere contracts to sell; hence it was held that the plaintiffs were only entitled to commissions on the goods actually delivered to and accepted by the purchaser. Here the plaintiff was not a selling agent, and although his commission was to be "calculated on the amount received" on the orders, yet it is undisputed that the order in question was filled and the money paid. The distinction between the two cases is apparent. Keys v. Johnson, 68 Pa. 42, is cited as authority for the proposition that a broker must establish his employment as such "either by previous authority or by the acceptance of his agency and the adoption of his acts, and also must prove that his agency was the procuring cause of the sale." But in the same connection Justice Sharswood said that "when, being duly authorized to sell property at private sale, he has commenced a negotiation with a purchaser, the owner cannot, while such negotiation is pending, take it into his own hands and complete it either at or below the price first limited, and then refuse to pay the commissions." The doctrine of that case seems to us to aid the plaintiff here rather than the defendant.

In the determination of the question whether upon the evidence heretofore recited the plaintiff was entitled to have his case submitted to the jury it is to be observed that he had

no power to make contracts; his duty was not only to solicit orders but to "exploit" the business of the defendant—that is, to seek for purchasers, to bring them and the defendant together, or into negotiation with each other relative to a sale. After he had done this, it was optional with the defendant to complete the negotiations he had begun, either through him or through its officers; that is, the company could command his services throughout, but it could not avail itself of his previous services in finding an intending purchaser, and, by electing to complete the negotiations through its officers, deprive him of the stipulated compensation upon an actual sale fully consummated. The contract provided for this contingency by entitling him to commissions, not only on all orders given directly to him upon his solicitation which he communicated to the company, but also upon all orders accruing directly from his efforts in "exploiting said Pullman ventilator." There was evidence from which a jury could conclude that the Produce Exchange was induced by the plaintiff's efforts to consider the proposition which the defendant subsequently made, and that in consequence of his efforts the defendant was led to make the proposition, and that this resulted in its obtaining the order which it filled and was paid for. A broker would have been entitled to his commission upon such a state of facts, and although the plaintiff was not a broker, yet his duties were in many respects similar. But entirely apart from the decisions relative to brokers' commissions, the learned judge was clearly warranted by the terms of the special agreement in adding to his affirmation of the defendant's sixth point the qualifying instructions quoted at the outset of this opinion. If the case had rested here it would have been error to give binding instructions for the defendant.

But it is insisted that the matter of the Produce Exchange ventilation was brought to Jacobson's attention by one Tracy Rodgers, a friend, not by the plaintiff, nor by any one connected with the company, and that the contract was obtained entirely through his, Jacobson's, efforts. We shall not stop to analyse his testimony. We may assume for present purposes that it was sufficient to sustain the conclusion above stated and yet it would not necessarily follow that the case was one for binding instructions in favor of the defendant.

The plaintiff by his testimony, taken in connection with the admitted facts, having made out a prima facie case, which he was entitled to have submitted to the jury, the case was none the less for the jury because the defendant adduced oral testimony, which, if believed by the jury, would warrant them in finding against the plaintiff : Howard Express Co. v. Wile, 64 Pa. 201 ; Lerch v. Bard, 153 Pa. 573 ; Kelton v. Fifer, 26 Pa. Superior Ct. 603.

A written agreement entered into between the plaintiff and the defendant on August 9, 1902, contains a recital of the fact that on that day the defendant gave to the plaintiff $100 "in part payment of the claim of one hundred and sixty-two dollars and fifty cents " of the plaintiff, "for commissions and salary due " him " up to June 30, 1902, while in the employ of the " defendant. It is argued that the plaintiff was therefore estopped to set up the present claim of $1,040. But the two claims are not identical and there is nothing in the recital from which it can be implied that the claim of $162.50 covered the plaintiff's compensation for his entire services rendered prior to June 30. The correspondence which preceded the agreement and the testimony which is quoted in the second assignment of error show quite clearly that it did not. " But evidence to explain the subject matter of an agreement, is essentially different from that which varies the terms in which the contract is conceived:" Barnhart v. Riddle, 29 Pa. 92. But we do not rest our decision on anything outside the paper itself. The claim therein referred to was for a certain sum which was due the plaintiff on or prior to June 30. The claim in suit is for an entirely different sum and there is no evidence that it was due under the terms of the agreement of February, 1902, when the agreement of August, 1902, was entered into. Even though there had been no explanatory evidence identifying the subject-matter of the recital, the court would not have been warranted in holding that it barred recovery of the claim in suit. It follows that the admission of such explanatory evidence did the defendant no harm ; but we are not to be understood as holding that the admission of such evidence was erroneous.

The counsel for the appellant correctly say that the question at issue was whether the plaintiff had performed the work

required by the contract to entitle him to a commission. In the trial of that issue the defendant had a right to introduce evidence that the order was not secured by the plaintiff but was secured by Jacobson entirely without the aid of information derived by him from or through the plaintiff or defendant. This was permitted; and we can see no error in rejecting the defendant's offer to show by Jacobson that the company had paid him for securing the order. As the case stood at the time the offer was made, it was immaterial.

All the assignments of error are overruled and the judgment is affirmed.