# Speer *v.* Benedum-Trees Oil Company, Appellant.

*Principal and agent—Real estate broker—Commissions—Failure
to make sale—Subsequent sale.*

It is always incumbent upon a broker seeking to recover a com-
mission to prove either that a sale was made to the party whom he
procured as a purchaser, or that the purchaser was able and willing
to buy, and the failure to make an actual sale was through no fault
of the broker or his customer. If the broker does not show that his
purchaser was willing to buy at the price fixed by the seller, it is
immaterial that afterwards the negotiations were taken up through
another intermediary with whom the broker had no connection, and
that the same parties came to an agreement for the sale of the
property at a less price in which it was stipulated that no com-
missions should be paid by the seller to any one.

Argued Nov. 7, 1912. Appeal, No. 82, Oct. T., 1912,
by defendant, from judgment of C. P. No. 4, Allegheny
Co., Fourth Term, 1908, No. 838, on verdict for plaintiff
in case of J. L. Dawson Speer v. Benedum-Trees Oil
Company. Before MESTREZAT, POTTER, ELKIN, STEW-
ART and MOSCHZISKER, JJ. Reversed.

Assumpsit for commissions for sale of oil leases. Be-
fore COHEN, J.

The facts are stated in the opinion of the Supreme
Court.

The exhibits referred to in the opinion were as fol-
lows:

EXHIBIT "A."

February 9th, 1907.

J. L. D. Speer,
    Pittsburgh, Pa.
Dear Sir:—

Confirming my conversation with you, in considera-
tion of your making sale of the Benedum-Trees interest
to T. N. Barnsdall, we agree to pay you the sum of

$25,000 in notes received from T. N. Barnsdall running nine months. This amount we agree to pay you in addition to any commission you may receive from T. N. Barnsdall.

Yours very truly,

(Signed)   BENEDUM-TREES OIL CO.

By J. C. TREES, V. Pres.

EXHIBIT "B."

February 11th, 1907.

Mr. T. N. Barnsdall,

Pittsburgh, Pennsylvania.

Dear Sir:—

Confirming the written offer which we made to Mr. J. L. D. Speer and which was accepted by you this day, we hereby offer to sell to you our interest in the leases in Crawford, Clark, Lawrence and Wabash Counties, Illinois, in which you are jointly interested with us by virtue of certain assignments to you dated April 21st, 1906, for the sum of One Million ($1,000,000) Dollars, to be paid as follows:

One Hundred and Fifty Thousand ($150,000) Dollars, cash, upon the execution and delivery of proper assignment or assignments therefor, and the balance of said purchase money at the rate of Eighty Five Thousand ($85,000) Dollars each three months, the deferred payments to be evidenced by promissory notes made by you to our order in convenient denominations and bearing interest at six (6) per cent. from their dates; said purchase price to be secured by bonds and mortgage for the sum of One Million ($1,000,000) Dollars, said bonds to be used as collateral security for the deferred payments aforesaid, proportionately, and as soon as each one of said notes is paid said note to be delivered up to you and the bonds, security therefor, to be cancelled. It being further understood that should any of said notes not be paid at maturity or should you make a sale or transfer of any of the property secured thereby that then all of said notes shall thereupon become due and

payable and that we may then in default of payment take possession of said property. It being further understood that you shall keep all of the leases which we transfer to you valid and subsisting leases and that, until this mortgage is fully paid, you will properly operate and develop this property and protect all lines, and that in case you wish to surrender any of said leases you shall first obtain our written consent, and that you shall have all of the oil produced from this property from the first day of February, 1907, and shall pay all bills incurred in the operation and maintenance of said leases thereafter promptly as the same may become due to the end that the security under the mortgage to be given shall not be diminished.

We will make all proper assignments and transfer orders by February 21st, 1907, whereupon you will pay said sum of $150,000.00.

We are to have all oil on hand in the tanks produced prior to February 1st, 1907, and to be paid for one iron tank which we have built and paid for, when the Ohio Oil Company pays for the same.

(Signed)   BENEDUM-TREES OIL COMPANY,

By J. C. TREES, V. Pres.

Accepted this 11th day of February, 1907.

(Ex. D.)

Pittsburgh, Pa., February 11th, 1907.

J. L. D. Speer, Esq.,

Pittsburgh, Pa.

Dear Sir:

Confirming my conversation with you of this date I hereby authorize you to purchase the Benedum-Trees interests in the Illinois field for the sum of $1,000,000.00, I to make cash payment of $250,000 and the balance of the money to be paid in equal payments at three (3) months, to run for a period of Twenty-four (24) months, and to be secured by a bond and mortgage on the property purchased, all at 6 per cent.

The total mortgage is to be made for $1,000,000.

$750,000 of which is attached as collateral to the notes given to Benedum-Trees. The other $250,000 I am to receive when I make the cash payment of $250,000.

If you are able to make a deal with Benedum-Trees whereby I only pay $150,000 in cash, the time of payment on the balance in notes is to be extended to thirty (30) months, making the other $850,000 due in ten (10) equal payments.

The above proposition is made subject to a thorough examination by me and acceptance of the property.

Yours very truly,

T. N. BARNSDALL.

(Ex. E.)

Duquesne Club, Pittsburgh.

Pittsburgh, Pa., Feb. 9th, 1907.

J. L. D. Speer,

Pittsburgh, Pa.

Dear Sir:

Confirming my conversation with you of this date, we hereby accept the proposition of T. N. Barnsdall to purchase our interest in the Illinois Oil field, known as Benedum-Trees property in which T. N. Barnsdall is jointly interested for the sum of $1,000,000.00. Subject to his investigation of the property. A bond and mortgage is to be issued on our interest in property for the sum of $1,000,000.00 to be used as follows, and as collateral, on the following notes.

T. N. Barnsdall is to pay to Benedum-Trees Oil Co. $150,000.00 Cash, and receive from them $150,000.00 of the above bonds. T. N. Barnsdall is to give Benedum-Trees Oil Co. ten notes in payment for the balance due on the property, Ten notes for $85,000.00 each, due each three months, with interest at 6 per cent. secured proportionately by the $850,000.00 above mentioned bonds. It is understood that the longest of the above notes runs for thirty months. It is further understood that should any of the above notes not be paid at maturity that they then all become due and payable.

It is further agreed that T. N. Barnsdall keep the property in thorough order, keep all leases paid, and develop property as developments in field justify.

Very truly,

BENEDUM-TREES OIL CO.,

By J. C. Trees, V. Pres.

The court charged as follows:

This is a suit brought by J. L. Dawson Speer against the Benedum-Trees Oil Company to recover $25,000.00 with interest from the 27th day of February, 1907, by virtue of an agreement on the part of the defendant company to pay the plaintiff that sum of money, if the plaintiff procured a purchaser for the property mentioned therein for the sum of one million dollars.

If there were nothing before you but the statement of claim and Exhibit "A," which is the agreement on the part of the company to pay $25,000.00, this would be an exceedingly plain proposition. It becomes a little more complicated (perhaps), by reasons of the fact of the execution of a certain paper on February 9th, 1907, in the Duquesne Club, which paper was dictated by Speer, the plaintiff, acting then evidently on behalf of the defendant company, and in which the specific terms upon which the property was to be sold was set forth. This was followed by a paper from Mr. Barnsdall, the purchaser, and in that paper Barnsdall promises to do what Speer told the defendant company he could—sell the property for a million dollars. If it were not for the intervention of that letter dictated by Speer, he would be entitled to his money without any question, and it would be my duty to say so. [But when you come to consider the acceptance which has been offered in evidence, as an exhibit, being the letter of Barnsdall, you find that he does accept it at the price of one million dollars, the price fixed by the owners; and the only condition that he puts into his letter is that he shall have time to examine the property. That, of itself, is not an important condition, from the very fact that he, at

that time, was the owner of a one-half interest in that property, and the natural, common sense conclusion would be that he thoroughly understood the character of that property.] 8 [But there were other conditions in the letter attached to the sale which were not contained in the acceptance of Barnsdall, addressed to Speer, Exhibit "A." I therefore say to you that Barnsdall's acceptance not having been in accordance with the terms of the defendant company as suggested by Trees, its agent, at the Duquesne Club that night, when the contract was made, was no acceptance.] 9 That option was not accepted by Barnsdall, because the terms of the option were not complied with in the written acceptance, and under that condition, the plaintiff, Speer, could not recover. [But—and this is the crucial point of the case, as I take it,—where an agent brings a purchaser and owner together, and if the property sold was brought to the attention of the purchaser by the agent or broker, and the principal afterwards carried on the negotiations himself, or changes the original terms of the sale, the broker is entitled to his commission.] 10 [I am not going to analyze the evidence, that has been fully discussed to you by counsel; but it has been stated in the testimony that there had been negotiations between Barnsdall and the defendant long before February 9th. If there had been, the inquiry suggests itself, what did they need Speer for. And yet they avail themselves of Speer's services, and gave him a writing in which they said they would pay him $25,000 if he sold the property for a million dollars.] 11 [The defendants then themselves, took up the closing of this arrangement; they negotiated with the purchaser introduced to them by Speer; they modified and changed the original contract by selling the property for $900,000 instead of one million dollars.] 13 As to whether there was compliance with the original conditions, as contained in exhibit E, we do not know. [The sale was originally consummated, as Barnsdall testified, at $1,000,000. If the defend-

ant chose to reduce the price from $1,000,000 to a lower sum, the plaintiff is entitled to his commission, provided he did not waive it.] 14 You have heard the testimony of Benedum and Trees on that subject. Benedum testified that Speer absolutely waived his commission, at the time of the sale for $900,000, and Mr. Trees tells you that Richards waived his. This testimony is absolutely denied by Mr. Speer and Mr. Richards. [Mr. Richards also denies that he was a partner of Speer. He has not been contradicted, and if Richards was not a partner of Speer, how could he waive that to which Mr. Speer was entitled?] 15 [There are two essential points for your determination in this case. Was the property sold to Barnsdall? I think it is clear that it was. Did Speer (the plaintiff) bring these parties together? I think it is clear that he was engaged to and did do that.] 16 [Notwithstanding the fact that the defendants negotiated with Barnsdall previously, they engaged Speer according to their own testimony and according to the documents, to negotiate with Barnsdall. If so, and if you find that there was a modification of the contract purchase price from $1,000,000 to any other sum, $900,-000, or whatever it may be, or a modification of any other of the terms of the original contract under which it was to be sold, the plaintiff is entitled to recover.] 18 So that you have to determine, not what the counsel have said, who is lying, but who is mistaken. I will not accuse any of these gentlemen of not telling the truth; some of them are mistaken, and it is for you to say which. If this was a continuing transaction and the modification of the terms of the contract was made, the plaintiff would still be entitled to take a commission from both parties. The original undertaking was that he might. Ordinarily a broker can not take commissions from the purchaser and the owner. He cannot do so, unless the fact is disclosed to his principal. But in this case there was a contract, and the contract provided that he might do so. The Benedum-Trees Oil

Company agreed to this, and it was understood that he might. But over and above that fact stands the fact that Barnsdall himself says in his testimony, "I gave Richards and Speer stock for raising money," and not for commissions. He explains the last exhibit that was offered. He gives you the construction of that himself, and he is the author of it. We have no evidence of the actual value of that stock, but only what its par value is. However, it does not make any difference, for the purposes of this case, what it is worth. A one hundred share certificate of the par value of $100 a share of a given stock may not be worth a dollar. The great fact remains that Barnsdall himself admits that he gave $100,000 par value of Red Bank Oil Company's stock for raising money, and not as commission on the sale of the property. [To reduce the legal propositions in this case, I say to you that under the original contract the plaintiff would not be entitled to his commission, because there were certain conditions connected with it which were not set forth in the acceptance of Mr. Barnsdall.] (9) But nevertheless, if the defendants in this case, afterwards changed the conditions and agreed to sell the property for less, or waived any of the original clauses in the option, and sold the property, the plaintiff is entitled to recover,—unless you find that he waived his commission, as testified by Mr. Benedum. (19) Taking the whole case together, you are to ascertain the probabilities of this case. You saw the witnesses on the stand. You are to decide this case by the weight of the evidence, and when I say that, I do not mean by the number of witnesses on either side. I mean by the character of the witnesses, as they impressed your judgment, by the coherency of their statements, by the probability of what they told you, and by the probable connection of the testimony of each witness to the whole case. In other words, you are to apply your common sense in discriminating between these parties. ["The laborer is worthy of his hire."] (20) [If the compensa-

tion was fixed, and if the plaintiff complied with the principles of law which I have stated to you as governing this case, and if the defendant amended and changed the original agreement, módified it, but nevertheless sold the property to Barnsdall, the man brought to them by the plaintiff, the plaintiff is entitled to recover.] (21)

Verdict and judgment for plaintiff for $31,958.33. Defendant appealed.

*Errors assigned* were (1) refusal of binding instructions for defendant; (2) refusal of motion to enter judgment for defendant n. o. v.; (8-21) portions of charge as above, quoting them.

*John O. Wickes* and *John S. Weller,* with them *A. E. Young,* for appellant.—In order to entitle the plaintiff to recover in this action, he must show either that he secured a binding contract between the defendant, Benedum-Trees Oil Company, and T. N. Barnsdall for a sale of the property in question at one million ($1,-000,000) dollars, or that his failure to do so was caused by the fault or inability of the defendant: Hartley v. Anderson, 150 Pa. 391; Henderson v. Sonneborn, 30 Pa. Superior Ct. 182; Barber v. Miller, 41 Pa. Superior Ct. 442; Thompson v. Goldman, 41 Pa. Superior Ct. 209; Pierce v. Truitt, 12 Atl. Repr. 661; Middleton v. Thompson, 163 Pa. 112; Kifer v. Yoder, 198 Pa. 308; Stevenson v. Bannan, 227 Pa. 498 (reported again in 235 Pa. 512); Lowenstein v. McPeak, 48 Pa. Superior Ct. 280.

There was not a continuing transaction between the alleged contract at one million dollars and the sale at nine hundred thousand dollars: Earp v. Cummins, 54 Pa. 394; Kifer v. Yoder, 198 Pa. 308; Hendricks v. Daniels, 19 N. Y. Supp. 414; Singer & Talcott Stone Company v. Hutchinson, 61 Ill. App. 308; Lipe v. Ludewick, 14 Ill. App. 372; Markus v. Kenneally, 19 Misc. 517 (43 N. Y. 1056).

*Edwin W. Smith,* of *Reed, Smith, Shaw & Beal,* for appellee.—When a broker is duly authorized to sell property by private sale and has commenced negotiations with a purchaser the owner cannot while such negotiation is pending take it into his own hands and complete it either at or below the price first limited and then refuse to pay the commission: Peters v. Holmes, 45 Pa. Superior Ct. 278; Keys v. Johnson, 68 Pa. 42; Reed v. Reed, 82 Pa. 420; Showaker v. Kelly, 21 Pa. Superior Ct. 390.


OPINION BY MR. JUSTICE POTTER, January 6, 1913:

The plaintiff brought this action to recover a commission as a broker for effecting the sale of certain oil properties for the defendant. He based his right to compensation upon an agreement, under which in case he made sale of the properties for the sum of one million dollars to one T. N. Barnsdall, he was to receive for his services twenty-five thousand dollars in notes of the purchaser, running for a period of nine months. That such was the agreement is admitted by the defendant. In his statement of claim plaintiff alleges that he did effect the sale of the properties for the sum of one million dollars, to the said Barnsdall upon terms which are set forth in the paper attached to the statement, marked Exhibit B, and he further alleges that the proposition as set forth in the paper was duly accepted by Barnsdall, but that after the execution of the contract of sale between the defendant company and Barnsdall, the parties to the contract modified the terms thereof, and completed the sale for the sum of nine hundred thousand dollars. If these averments were true, the plaintiff was entitled to his commission. In the affidavit of defense filed by defendant, it was, however, alleged that the plaintiff had represented to the defendant that T. N. Barnsdall had authorized him, the said plaintiff, to purchase the interest of defendant in the oil properties, for one million dollars, and that solely by reason

of such representation, and in consideration of the sale
being made at that price, and upon condition that
Barnsdall should ratify the action of plaintiff in that
behalf, defendant agreed to pay plaintiff the commis-
sion of twenty-five thousand dollars. But that two days
later when said Barnsdall learned of plaintiff's action,
he refused to ratify it, and stated that plaintiff had
acted without authority, and he, therefore, refused to
sign the agreement to purchase, and never did buy the
properties at the price of one million dollars. That
plaintiff then abandoned his effort to make the sale, but
thereafter on February 26, 1907, through another per-
son, defendant sold its interest in the oil leases, for the
sum of nine hundred thousand dollars.

A distinct issue of fact was thus presented, as to
whether or not plaintiff did sell the properties for one
million dollars. If he did not make the sale at that
price, he was not entitled to recover, unless the failure
to sell was owing to some fault of the defendant com-
pany. The trial judge seems to have misapprehended
the precise point in controversy, which was whether or
not the plaintiff earned his commission by effecting a
sale upon the only terms prescribed to him. The case
was submitted to the jury apparently upon the theory
that the plaintiff brought the parties together, and
should, therefore, be paid a commission, even though
there was no sale at the stipulated price, but a later
sale at a modified price. We can find nothing in the
evidence to justify the submission of any such question
to the jury. As a matter of fact the plaintiff did not
bring the parties together; the testimony shows that
they had been jointly interested in the properties for a
year, and each had been endeavoring for some time to
buy out the interest of the other. The efforts of plain-
tiff were directed towards bringing to a successful issue
the pending negotiations. If he succeeded in doing so,
upon the terms set forth in the paper Exhibit B, at-
tached to the statement of claim, he was to have the com-

mission as set forth in Exhibit A. But an examination of the paper Exhibit B, upon which plaintiff bases his right to recover, shows that it did not constitute a sale. It was, by its terms merely an offer to sell, and it was never accepted by Barnsdall to whom it was addressed. The other letter, which apparently preceded it, identified as Exhibit D, which was signed by Barnsdall, did authorize plaintiff to purchase defendant's interest in the oil properties for the sum of one million dollars, upon terms indicated, but it contained this significant qualification: "The above proposition is made subject to a thorough examination by me, and acceptance of the property." Then apparently came the letter written by the vice president of the defendant company, identified as Exhibit E, dated February 9, but which the testimony indicates should have been dated February 11, beginning as follows: "Confirming my conversation with you of this date, we hereby accept the proposition of T. N. Barnsdall to purchase our interest in the Illinois oil fields, known as Benedum-Trees property, in which T. N. Barnsdall is jointly interested, for the sum of $1,000,000. Subject to his investigation of the property." The uncontradicted testimony of Barnsdall is that as a result of his investigation, he came to the conclusion that he would not take the properties at the price of one million dollars, and he refused to do so. That action clearly ended plaintiff's right to claim his commission, under the agreement. His services failed to bring about the sale at the stipulated price. As we said in Kifer v. Yoder, 198 Pa. 308, "It is always incumbent upon a broker seeking to recover a commission, to prove either that a sale was made to the party whom he procured as a purchaser, or that the purchaser was able and willing to buy, and the failure to make an actual sale was through no fault of the broker or his customer." Manifestly the plaintiff in this case did not show that his purchaser was willing to buy at the fixed price. It makes no difference that afterwards the

matter was taken up through another intermediary, and the same parties came to an agreement for the sale of the properties at a less price, in which it was stipulated that no commission should be paid by defendant company to anyone. With that transaction the evidence shows that plaintiff had nothing to do, in so far as the defendant was concerned. It was a separate transaction conducted by Mr. Richards, in which he testified that he did not act for Mr. Speer, the plaintiff. Nowhere in the evidence do we find anything to sustain the claim of plaintiff that he effected a sale of the properties at the price which, under the terms of the agreement alone would have entitled him to a commission.

The first and second assignments of error are respectively to the refusal of the court below to give binding instructions for the defendant, and to enter judgment non obstante veredicto. These assignments are both sustained. The judgment is reversed, and is here entered for the defendant.