# Read *v.* Ely, Appellant.

*Contracts—Brokers—Commissions—Sale of stocks and bonds—
Case for jury.*

1. When a broker seeks to recover a commission, it is incumbent
upon him to prove either that a sale was made to the party whom
he produced or that the purchaser was able and willing to buy,
and the failure to make an actual sale was through no fault of
the broker or his customer. If his introduction of the parties
results in the sale, he has earned his commission; but even
though he may not have brought the parties together in the first
instance, he is entitled to a commission if he was the efficient
cause of pending negotiations being brought to a successful issue.

2. In an action to recover commissions for the sale of the stock
and bonds of an electric company, the case is for the jury and a
verdict and judgment for the plaintiff will be sustained where it
appears from plaintiff's evidence that he was employed as a broker
to effect a sale of the stock and bonds in question; that plaintiff
with defendant's consent shared his agency with another, who
brought the matter to the attention of an officer of the purchaser,
who in turn communicated the proposition to his superior officer,
who sent a representative to the defendant with whom the sale
was arranged and consummated; that the entire transaction
covered a period of less than three months, and that during such
period plaintiff personally saw a director of the purchaser and
learned from him that the sale could be effected if a satisfactory
price could be arranged, and that plaintiff so advised defendant,
who directed plaintiff to suspend his efforts for the time being and
finally completed the sale without plaintiff's further aid.

Argued Oct. 19, 1915.   Appeal, No. 222, Oct. T., 1915,

by defendant, from judgment of C. P. Allegheny Co., July T., 1913, No. 153, on verdict for plaintiff in case of Charles H. Read v. Van Horn Ely.   Before MESTREZAT, POTTER, STEWART and MOSCHZISKER, JJ.   Affirmed.

Assumpsit to recover commissions on the sale of certain stock and bonds.   Before BROWN, J.

The facts appear by the opinion of the Supreme Court.

Verdict for plaintiff for $11,273.34 and judgment thereon.   Defendant appealed.

*Error assigned,* among others, was in refusing binding instructions for defendant.

*John S. Wendt,* with him *William S. Moorhead,* for appellant.

*L. K. Porter* and *S. G. Porter,* for appellee.

OPINION BY MR. JUSTICE POTTER, January 3, 1916:

This was an action of assumpsit brought to recover broker's commissions for the sale of stock and bonds of the Pittsburgh City Light & Power Company. That company was incorporated under the laws of Pennsylvania by defendant and others for the purpose of furnishing electric light and power. It appears to have absorbed a number of small companies doing business on the South Side, Pittsburgh, and in adjacent territory. Some 4,250 shares of its stock were issued. There was also an issue of bonds. Defendant was in control of these securities, and desired to sell them. The most likely customer seemed to be the Philadelphia company, which owned or controlled a large amount of business of the same character, in the same general vicinity. Plaintiff alleged that in December, 1912, defendant employed him to sell the stock and bonds of the Pittsburgh City Power & Light Company to the Philadelphia company, and agreed to pay him as a commission all that he could ob-

tain for the stock over $75,000.00 and for the bonds, over 90 per cent. of their par value. If he could not obtain more than $75,000 for the stock his commission was to be $2,500.00. Plaintiff thereupon, in conjunction with one Wheeler, with defendant's approval, entered into negotiations with representatives of the Philadelphia company and found that they were willing to consider the purchase of the stock and bonds, but regarded the price at which plaintiff offered them as too high. Plaintiff alleges that while these negotiations were pending in January, 1913, defendant took the matter out of his hands, and in February, 1913, through other parties, made a sale to the Philadelphia company, actually receiving $85,000.00 for the stock and 90 per cent. of their par value for the bonds, though the agreement of sale named $75,000.00 for the stock and 92½ per cent. for the bonds. Plaintiff claimed to recover in this action the sum of $10,000.00, being the amount for which the stock was sold in excess of $75,000.00.

Upon the trial in the court below, these allegations were substantially supported by the testimony offered on behalf of plaintiff, and were for the most part, denied by defendant. At the trial binding instructions in favor of defendant were refused, and the jury found in favor of plaintiff for the full amount of his claim and interest. Defendant has appealed, and his assignments of error raise but one substantial question, which is, whether the evidence of plaintiff's right to recover was sufficient to justify its submission to the jury.

There is little difference of opinion as to the law of the case. In Kifer v. Yoder, 198 Pa. 308, we said (pp. 309, 310) : "It is always incumbent upon a broker seeking to recover a commission, to prove either that a sale was made to the party whom he produced, or that the purchaser was able and willing to buy, and the failure to make an actual sale was through no fault of the broker or his customer......If his introduction of the parties had resulted in a sale, then his commission would

have been earned." In the same case there is a quotation
from the opinion of Chief Justice WOODWARD, in Earp v.
Cummins, 54 Pa. 394, 397, as follows: "'But if the serv-
ices of the broker, whatever they be, fail to accomplish a
sale, and several months after the proposed purchaser
had decided not to buy he is induced by other persons to
reconsider his resolution and then makes the purchase as
the consequence of such secondary or supervening influ-
ence, the broker has no right to a commission.'" To the
same effect are the decisions in Speer v. Benedum-Trees
Oil Co., 239 Pa. 180, and Groskin v. Moore, 249 Pa. 242.

Turning to the evidence in the present case, which the
court below held was sufficient to take the case to the
jury, it appears that plaintiff testified to the details of
several interviews with defendant in November and De-
cember, 1912, in which, particulars of the condition of
the business of the Light & Power Company were given
to him, and he was requested to make a personal in-
spection of the plant, which he did. He afterwards
saw defendant, who had meanwhile been in New York.
Defendant said he wanted to sell the plant, as it was
evident he would have to live in New York, but doubted
the wisdom of selling at that time. About December
23d, plaintiff had another interview with defendant, at
which he gave reasons for selling then rather than
waiting until later. Defendant said to him, "All
right, go ahead and sell it. I will make a price of $75,-
000.00 for the 4,250 shares of stock and you can have all
you get over that." Defendant also agreed, if plaintiff
sold for no more than $75,000.00 to "protect him for (i. e.
pay him) $2,500.00," and also to give him as compen-
sation all that he could obtain over 90 per cent. of their
par value, on a sale of the bonds. Defendant fixed
$30.00 a share on 4,250 shares, or $127,500.00 as the
asking figure for the stock. They discussed selling the
property to the Philadelphia company, or the Allegheny
County Light Company. A few days later, about De-
cember 30th, plaintiff and Wheeler went to defendant's

office and had a long interview with him, in which he gave them full details about the light and power company, its history, business and prospects. The arrangement was that Wheeler was to go to the Philadelphia company officials and present it to them first, and defendant repeated what he had said to plaintiff at their former interview in reference to compensation and asking price. Early in January, Wheeler and plaintiff again saw defendant and Wheeler reported that he had been to see Mr. Orr, an official of the Allegheny County Light Company, an allied concern, and given him detailed information which was to be laid before the vice-president of the Philadelphia company. Active negotiations of various kinds were carried on in aid of a sale, of which full report was made to defendant. This continued, according to plaintiff's statement, until early in March, 1913, when defendant requested plaintiff to let up on his activities. Two weeks later plaintiff learned that defendant had sold the properties to the Philadelphia company, on February 19th, preceding. Plaintiff states that when inquiry was made of defendant, he denied that there had been a sale, but plaintiff verified his information and brought this suit. The testimony of plaintiff was fully corroborated by that of John R. Wheeler, who assisted plaintiff in an effort to make the sale.

James D. Callery testified that he was vice-president of the Philadelphia company, and that in the early part of January, 1913, his attention was called to the fact that the outstanding stock of the Pittsburgh City Light & Power Company was for sale, and data was submitted to him in regard to that company by Mr. Orr, with whom Mr. Wheeler had negotiated, as shown by his testimony. Mr. Callery stated that he visited the office of Charles D. Halsey in New York on February 18, 1913, and discussed with him the purchase of the property of the Pittsburgh City Light & Power Company. On February 19th, he met Mr. Halsey, together with Mr. Ely, the defendant,

and certain other gentlemen. At this meeting they came to terms, as to the purchase of the stock and bonds of the light and power company. The price agreed upon was $85,000.00, for the stock and 90 per cent. of the par value of the bonds, but when the agreement was finally executed it provided for $75,000.00 for the stock and 92½ per cent. of the par value of the bonds.

Van Horn Ely, the defendant, called on cross-examination testified that on February 18, 1913, he received a letter from C. D. Halsey & Company, transmitting an offer from James D. Callery for the stock and bonds of the light and power company, and the sale was made in accordance with Mr. Callery's offer, and defendant signed the agreement of sale. Halsey, who was a stranger to defendant, had met him the day before, and stated that he had had a conversation with Mr. Callery about the light and power company, with reference to a possible purchase of its stock, or control of it in some way. Halsey stated that if he worked up a deal he would want a commission. Defendant told Halsey that the property was not for sale; that they didn't consider it as being for sale, and that previous offers from Mr. Callery's companies had been declined. The next day at a meeting in the office of Starring & Company, the sale was consummated.

The testimony upon the part of plaintiff, if credited by the jury, established the fact of plaintiff's employment as a broker to effect a sale of the stock and bonds in question. The evidence also showed acceptance by defendant of plaintiff's agency, and ratification of his acts in attempting to negotiate a sale. The evidence further tended to show that plaintiff's agency was the procuring cause of the sale. Plaintiff with defendant's consent, shared his agency with Wheeler. The latter brought the matter to the attention of Mr. Orr, who in turn communicated the proposition to his superior officer, Mr. Callery. He in turn sent Halsey to defendant, and the sale was arranged and consummated. All this took place within

a period of less than three months. During the same, period plaintiff also saw Mr. Starring, a director of the Philadelphia company, who was potent in its affairs, and learned from him that the sale could be effected, if a satisfactory price could be made. This was made known to defendant, who took upon himself the negotiations as to price, and directed plaintiff and Wheeler to suspend their efforts for the time being. It did not appear that he in any way revoked their agency. This testimony, if accepted as verity by the jury, was sufficient to sustain a finding that plaintiff's agency was the procuring cause of the sale. Furthermore the evidence was sufficient to support the inference that while the negotiations of plaintiff with the purchaser were under way, the defendant took them into his own hands, and completed the sale at a price equal to, or greater than the minimum to which plaintiff was limited. It is true that the testimony of plaintiff was contradicted in many particulars by that of defendant, but the credibility of the witnesses was for the jury.

From testimony offered on behalf of defendant, it appeared that J. G. Splane in the fall of 1912 made some attempts to purchase the property for an undisclosed principal. We see nothing in that, to affect plaintiff's rights. According to his testimony, his only knowledge of such negotiations was confined to defendant's statement to him that some unnamed broker had offered him $45,000.00 for the stock, but he had refused to entertain it and had driven him away and told him not to come back again. Under the doctrine of Earp v. Cummins, 54 Pa. 394, and the cases which follow it, Splane cannot be regarded as having contributed in any way to the sale and would not be entitled to a commission. But plaintiff's testimony was that he (plaintiff) was employed expressly to sell to the Philadelphia company, or its subsidiary concern, the Allegheny County Light Company. Under the ruling in Speer v. Benedum-Trees Oil Co., 239 Pa. 180, this employment would entitle him to his com-

mission, if he was the efficient cause of pending negotiations being brought to a successful issue, even though he may not have brought the parties together in the first instance.

Counsel for appellant argued at length that the trial judge erred in his qualified affirmance of certain points. We see no error in any of the qualifying statements. They were intended to aid the jury in properly applying the propositions set forth in the points, and they were all consistent with the theory that plaintiff could recover only in case it had been shown that his agency was the procuring cause of the sale.

The assignments of error are overruled, and the judgment is affirmed.