## McDonald *v.* Kimmell, Appellant.

*Principal and agent—Real estate brokers—Commissions—Failure of contract between principals.*

To entitle a real estate broker to the commission called for by his contract of employment, he must produce a person who is ready, able and willing both to accept and live up to the terms offered by his principal, and the burden of proof is upon the broker to establish the readiness, ability and willingness of the person proposed to comply with the offer of the principal.

Where a person owning city property desires to exchange it for coal property, and applies to a real estate broker to secure a customer, and the latter subsequently introduces a customer to his principal, and at this time two agreements are signed, one by which the principal agrees to pay the broker commissions for the sale to the customer named and the second between the principal and customer by which an exchange is agreed upon, and in which the coal is particularly described by locality, quality and quantity, and it is specified that the deal is to be closed twenty days thereafter, the broker will not be entitled to his commissions, if it appears before the final closing of the deal, that there were no such veins of coal in the land described in the agreement, and that the principal thereupon rescinded the contract.

Argued May 3, 1918. Appeal, No. 47, April T., 1918, by defendant, from order of C. P. Allegheny Co., April T., 1917, No. 142, refusing appeal from judgment of County Court in case of George T. McDonald, doing business as George T. McDonald Company, v. Edward G. Kimmell. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART and TREXLER, JJ. Reversed.

282, (1918).] Assignment of Error—Opinion of the Court.

Petition for appeal from the County Court of Allegheny County.

The facts are stated in the opinion of the Superior Court.

*Error assigned* was order refusing to allow the appeal.

*Ernest C. Irwin,* with him *J. L. Ritchey* and *Waston & Freeman,* for appellant.—The plaintiff cannot claim commissions on the ground that a contract of exchange was made, because no valid enforceable contract of sale was entered into: Hipple v. Laird, 189 Pa. 472; Allen v. Hammond, 36 U. S. 63.

The contract between appellant and Snyder cannot be specifically enforced by the appellant, because Snyder has no coal; neither can it be enforced by way of suit for damages, and the contract is therefore wholly worthless to the appellant: Glasses v. Stewart, 32 Pa. Superior Ct. 385.

The agreement was to pay commissions to the appellee when the exchange deal should be consummated, not when the contract of exchange was entered into.

*W. W. Stoner,* of *J. M. Stoner & Sons,* for appellee.—The law applicable to the case at bar is stated in Creveling v. Wood & Leman, 95 Pa. 152.

See also Keys v. Johnson, 68 Pa. 42.

OPINION BY ORLADY, P. J., July 10, 1918:

The plaintiff, a registered real estate broker, was requested by the defendant to secure him a customer, who would exchange coal lands for his two pieces of real estate in Pittsburgh, which were worth approximately $40,000, subject to mortgages of $23,000. The plaintiff, through communication with another broker, introduced one A. M. Snyder, who claimed to be the owner of 600 acres of coal land in West Virginia, and after some correspondence Snyder and Kimmell were brought together, by their respective brokers on July 5, 1916, when Kimmell

signed a paper as follows: "This is to certify that I have this day agreed to and with George T. McDonald Company, to pay them for the sale of my properties on Arch street and Allegheny avenue, to A. M. Snyder, the sum of $800, being the commission agreed upon for said sale." At the same time, Kimmell and Snyder executed an agreement, reciting, that Kimmell agreed to deliver by deed of general warranty, in fee simple, free of liens, unto Snyder, the properties in the City of Pittsburgh, in consideration for which Snyder agreed to deliver to Kimmell "by good and sufficient deed of general warranty, free and clear of all liens and encumbrances, certain tracts of coal, located in Doddridge County, West Virginia, fully described in an attached plan, which defined the acreage of twelve tracts, aggregating 600 acres, the exact description of which parcels of coal were to be taken from the deed of Snyder; the said coal being the Sewickley, Red Stone, Freeport, and Kittanning veins (the Pittsburgh and surface veins as well as the surface land were reserved), each having an average thickness of about five feet, as evidenced in the drilling records and geological reports in the possession of Snyder." It was further provided that the deeds were to be delivered on or before July 25, 1916, when "the deal was to be closed at the plaintiff's office in Pittsburgh."

Soon after the writings were executed it was discovered, as alleged in the defendant's affidavit of defense, "none of the veins of coal, Sewickley, Red Stone, Freeport and Pittsburgh, existed or are contained in or underlying the described tracts of land, or any of them of a thickness of five feet, or of any minable thickness, or of any commercial quality or quantity whatever, and that at the time of signing the contract Snyder was not the owner of any such veins of coal in the described land, which fact was known to Snyder when the agreement was made and not known to Kimmell." Before the day for the execution of the deed to close the deal, Kimmell gave notice to Snyder and to the plaintiff herein, of his

rescission of the contract, by reason of the entire failure of consideration and misstatement as to the existence of the veins of coal under the described tracts of land; the agreement having been signed by the defendant, based on the existence of the veins of coal and that Snyder had a valid title thereto.

The plaintiff thereupon brought suit, and in his statement of claim he averred, "Second, That on the fifth day of July, 1916, the said plaintiff represented E. G. Kimmell and consummated a deal between him and A. M. Snyder, in the exchange of certain coal lands in Doddridge County, West Virginia, for the property belonging to E. G. Kimmell, located in 21st and 22d wards of the City of Pittsburgh, as more fully set forth in an agreement attached hereto." The case was heard in the county court on the statement of claim and answer. The facts averred in the answer are undenied. Another defense is suggested, but the one herein considered is regarded by both parties as the controlling one. The county court held that while the nonexistence of the coal might be a sufficient reason for the cancellation of the agreement between the principals, it was not a good reason to deny the commission to the broker, who in good faith brought the purchaser to the defendant, who accepted him and agreed to pay the commission, and entered a judgment in the plaintiff's favor for want of a sufficient affidavit of defense.

A petition was presented to the Court of Common Pleas for allowance of an appeal from the decision of the county court, which was refused, and from that order the present appeal is taken. Summarizing the undisputed facts from the pleadings in this case; there was no seller and no purchaser. The proposed purchaser could not perform what the plaintiff promised, and was authorized to secure, and the sale was not consummated, for the reasons as above stated. The described coal was the single subject-matter of the contract, and its material consideration. The plaintiff bases his right to recover

on the allegation, that on July 5, 1916, he represented Kimmell, and "consummated a deal between him and A. M. Snyder in the exchange of certain coal lands." The deal was not consummated on July 5, 1916, or at any other time, and when the preliminary agreement was entered into, by its very terms, the transaction was to be held as unexecuted until July 25th, "when the deal was to be closed," when the plaintiff was to produce a purchaser who could execute a valid deed for the coal land.

The authorities determining the rights of the parties under such a statement of facts, are somewhat conflicting, but there is a well-defined line of decisions in this and other states which hold that, to entitle a broker to the commission called for by his contract of employment, he must produce a person who is ready, able and willing, both to accept, and live up to the terms offered by his principal, 4 R. C. L. 307; and the burden of proof is upon the broker to establish the readiness, ability and willingness of the person proposed, to comply with the offer of the principal.

If the consideration is obviously, and on the face of the contract impossible, it is no consideration, and will not support an agreement. Where the parties make an agreement, and are ignorant at the time that performance of the contract is impossible, there is no contract, if it appears upon the construction of the agreement, that it was intended to be conditional upon the supposed possibility of performance. Such a mistake renders the agreement void: Cyc. pages 326, 397 and 627. A broker is never entitled to commission for unsuccessful efforts, and the risk of failure is wholly his. The reward comes only with his success. The broker may devote his time and labor, yet, if he fails to accomplish a bargain he loses the labor and effort which was staked upon success: Sibbald v. Bethlehem Iron Co., 83 N. Y. 378; English v. William George Realty Co., 117 South Western Reports 996. It is not sufficient that the customer is ready and willing, but he must also have the ability to carry out the

purchase or exchange. Nor is it sufficient that he is able, ready and willing, but on terms different from those prescribed. A preliminary or tentative agreement which is not binding on the parties, and which is not carried into effect, does not give a right to compensation: 9 C. J. pages 599 and 609.

In this case, the services of the broker failed to bring about the sale upon the terms specified in the agreement. It is also incumbent upon a broker seeking to recover a commission, to prove either that a sale was made to the party whom he procured as a purchaser, or that the purchaser was able and willing to buy, and the failure to make an actual sale was through no fault of the broker or his customer: Kifer v. Yoder, 198 Pa. 308; Speer v. Benedum-Trees Oil Co., 239 Pa. 180.

Snyder, the consumer produced by this plaintiff, did not fulfill the terms of the promise, and Snyder must have known of the misrepresentation as to the presence of coal in the land he offered in exchange. Or, if he did not know, then his agreement to deliver a valid deed for the described coal was a promise to do an impossibility, and no consideration.

A case relied on by the plaintiff, Keys v. Johnson, 68 Pa. 42, states: Brokers are persons whose business is to bring buyer and seller together. They need have nothing to do with the negotiations of the bargain. A broker becomes entitled to his commissions whenever he procures for his principal a party with whom he is satisfied, and who actually contracts for the purchase of the property and is acceptable to the owner. He must prove that his agency was the procuring cause of the sale. If the broker procures a person with whom a bargain is made upon any terms, he is entitled to his commission, unless there is something special in the contract of employment, or circumstances of the case, to preclude him, and as stated in Samuels v. Lukenback, 205 Pa. 430, as a necessary corollary, the employment must be to sell the thing for the sale of which commissions are claimed.

A contract is void if it relates to a subject-matter contemplated by the parties as existing at the time the contract was made, but which in fact did not exist, Reigles v. Life Ins. Co., and the principle is illustrated in the opinion as follows: "A. agrees to buy a certain horse from B. It turns out that the horse is dead at the time of the bargain, though neither party was then aware of the fact. The agreement is void. A. agrees to buy a house belonging to B. The house was previously destroyed by fire, but the parties deal in ignorance of that fact. The contract, not being for the sale of the land on which the house stood, was not enforceable. So, too, A., being entitled to an estate for the life of B., agreed to sell it to C. B. was dead, but both parties were ignorant of the fact. The agreement was a void one." A person has earned his commission when he has introduced a responsible purchaser to his principal, who is ready to buy at the price named: Clendenon v. Pancoast, 75 Pa. 213; when the meeting of the parties interested has resulted in a contract, Holmes v. Neafie, 151 Pa. 392; and, when he procures a party with whom his principal actually contracts, Hipple v. Laird, 189 Pa. 472; Irons v. Snyder, 49 Pa. Superior Ct. 522. Until the broker accomplishes the object of his employment, he is not entitled to his commission: Thompson v. Goldman, 41 Pa. Superior Ct. 209.

While this plaintiff brought the parties together, that was but one step in the transaction. The controlling and subject-matter of the contract, was the physical presence of the described coal in the land offered in exchange, and when it was determined that it was nonexistent the whole transaction fell. The mistake, whether accidental or designed must be regarded as essential and controlling. To create a contract both parties should agree on the same thing in the same sense. The assent must reach the identity of the subject-matter, for if the parties to a negotiation have reference to different things to be sold, there is no agreement, 20 A. & E. Encl. 811. The minds of these parties never met.

282, (1918).]      Opinion of the Court.

The written agreement, on which the plaintiff's claim is founded, being signed at the same time as the contract between Kimmell and Snyder, is so associated with that transaction that it must be considered as a part of it and dependent upon the consummation of the deal on July 25, 1916. The contract having been rightly rescinded for failure of a valid consideration, the claim of the broker falls with it. The contract of exchange was conditional in its express terms. While the broker did not vouch for the validity of the Snyder title, he did make his claim for commission dependent upon the integrity of the statements of Snyder and in the Snyder abstract.

The order of the Court of Common Pleas is reversed, the record remitted to the court below, with direction to allow the appeal.