## Pratt *versus* Patterson's Executors.

112  475
f196 209

1. A real estate broker's commissions are earned whenever he has procured a buyer who will comply with the conditions fixed by his principal for the property proposed to be sold; but this rule depends not only on the fact that the broker is to be regarded as the agent of the seller, but that, as such agent, he acts with the utmost good faith towards his principal.

112      475
20 SC ¹373
20 SC ²410
112      475
30 SC ¹189

2. The intentional concealment of important and material facts from the knowledge of his principal, by a broker employed to sell real estate, will deprive him of his right to commissions for procuring a buyer.

March 29th, 1886.    Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas, No. 4, of *Philadelphia county :*   Of July Term, 1885, No. 133.

This was an action of assumpsit, brought July 11th, 1870, by Dundas T. Pratt against Lydia Patterson and Frederick Patterson, executors of the last will and testament of George Patterson, deceased, to recover commissions, as a real estate broker, for the sale of real estate of George Patterson by the plaintiff. Pleas, *non assumpsit, actio non accrevit infra sex annos,* payment with leave.

The following are the facts as they appeared on the trial before WILLSON, J.:   In 1868 the plaintiff was a real estate broker. In March of that year George Patterson employed him to find a buyer for his real estate at the southwest corner Eighth and Chestnut streets, Philadelphia. The plaintiff found a purchaser in the person of Mr. W. W. Harding, and the price agreed upon was $140,000, which was the price fixed by Mr. Patterson. Of this sum $30,000 was to be paid in cash, and the remainder secured by the purchaser's bond and mortgage on the premises. Mr. Harding desired to pur-

chase also the adjoining property, and being afraid that if his intention was known, the owners of the property would advance the price, he made an agreement with the plaintiff, by which a clerk in his employ, Mr. Thomas Natt, was put forward as the ostensible purchaser. Mr. Natt was a young man in Harding's employ at a small salary, and was altogether irresponsible pecuniarily. By the arrangement made between the plaintiff and Mr. Harding, Mr. Natt was reported to the owner of the property as the purchaser, and his name was put into the written contract of purchase as the buyer. The name of the real purchaser was never communicated to Mr. Patterson.

Patterson had represented the property as containing in depth about 10 per cent. more than it really contained, and when this was discovered the purchaser declined to give more than $135,000 for the property.

The plaintiff replied that it was useless to make a reduced offer, as Patterson would not take less than $140,000, and that he, the plaintiff, would not communicate with him unless the purchaser agreed to give that sum for the property.

The purchaser then said that he would give the $140,000 only on condition that the plaintiff should offer first respectively $135,000 and $137,500; they being declined, then to close the transaction with the $140,000. The plaintiff replied that he knew that the smaller offers would be declined, and that he would not submit them unless Natt would sign the agreement to purchase at $140,000 if Patterson should decline them. Natt then signed the agreement to purchase at $140,000—$30,000 in cash, balance secured on the property. With this agreement the plaintiff called on Patterson. The smaller offers were declined. The plaintiff explained to Patterson why he made them. Patterson accepted Natt as the purchaser, but said he would not sign the agreement until he had seen his lawyer, as he had got into trouble before by signing papers, but he said the " sale is made," and that he would produce the deed the next day to make the conveyance. He accordingly called on the plaintiff the next morning, but without the deed, and said again that he would consummate the sale. This, however, he finally refused to · do, and broke off all negotiations.

The plaintiff having closed his case, on motion of the defendants the court granted a compulsory nonsuit. This the court *in banc* refused to take off.

Judgment of nonsuit was accordingly entered; whereupon the plaintiff took this writ, assigning for error the refusal of the court to take off the nonsuit.

[Pratt v. Patterson's Executors.

*Amos Briggs*, for plaintiff in error.—The evidence is indisputable that the plaintiff procured a purchaser, and that Patterson agreed to sell to him the property. And this, according to the case of Clendenon v. Pancoast, 75 Pa. St., 213, entitles the plaintiff to recover.

But it is said that the plaintiff, being the agent for Patterson, forfeited his commissions because he was not faithful to his trust in disclosing the name of Harding as the purchaser.

The case has been tried several times. The first time in 1870, in the District Court, before THAYER, J., resulting in a verdict for the plaintiff. This trial was set aside because, as the District Court then interpreted the law, the agent could not recover unless the vendor actually made a conveyance to the party agreeing to purchase. The report of this trial is in 7 Phila. R., 135. The case was then discontinued, and it was renewed in the Court of *Nisi Prius*, and tried before the late Mr. Justice WILLIAMS. He granted a judgment of nonsuit, which you reversed in Pratt v. Patterson, 81 Pa. St., 114. Upon the abolition of the *Nisi Prius* Court, the case went into the Common Pleas, No. 4, and was again tried by THAYER, J., in 1877, and verdict again for the plaintiff. Before this trial, you had exploded the doctrine held by THAYER, J., in 1870, by your decision in Clendenon v. Pancoast, 75 Pa. St., 213, announcing that a real estate broker is entitled to recover if he procure a purchaser upon the vendor's terms, and even though the vendor refuse to ratify the purchase. Mr. Justice THAYER recognized this doctrine and applied it in the trial in 1877, and submitted the question of alleged fraudulent intent in the non-disclosure of Harding's name to the jury. The jury found for the plaintiff, thus establishing the fact that there was no fraud. He, however, again set aside the verdict; this time upon the alleged ground that Harding was the real purchaser, and the disclosure of his name was important, because he was to give his bond as well as his mortgage; whereas Natt was but a man of straw and his bond was, therefore, worthless. The case is reported in Pratt v. Patterson, 12 Phila. R., 460. In granting the new trial, the learned judge disposes of the question of fraudulent concealment in this way:

" The jury have found that the concealment of the name of the real purchaser from his principal was without any fraudulent intent, and that finding is in entire accord with the evidence in this cause."

Now it is to be observed that this new trial was granted upon the sole ground that Harding was the purchaser and had to give his bond, which is a personal security, in addition to the pledge of the land in mortgage.

It is, nevertheless, apparent that from the evidence in the present bill of exceptions there is no such evidence to support this nonsuit, for Harding was not to purchase from Patterson at all, nor to give him his bond and mortgage, nor, indeed, to have anything whatever to do with Patterson in any event. How, then, can the non-disclosure of Harding's name be said to be material, either as a means of furnishing a personal security or as an element of fraud?

*Thomas Hart, Jr.*, for defendants in error.—A broker has earned his commission when he procures a party *with whom his principal is satisfied*, and who actually contracts for the property at a price satisfactory to the owner: Keys *v.* Johnson, 18 P. F. S., 42; Glentworth *v.* Luther, 21 Barb., 145.

Without following the argument upon the other side further, the defendants in error submit that the nonsuit was properly granted, and should be sustained,

1. — Because Pratt was not a faithful agent, but violated his duty to his employer in two most important particulars: In deceiving Mr. Patterson about the buyer, in falsely stating that he was Thomas S. Natt, and in offering Mr. Patterson $5,000 less for the property than the plaintiff knew at the time the purchaser was willing and had agreed to give.

An agent is bound to good faith, and as the result of this is bound to keep his employer fully apprised of every fact or circumstance relating to the business or the interest of his employer which he may acquire: Story on Agency, section 208; Wingate *v.* Mechanics' Bank, 10 Barr, 109; Harvey *v.* Turner, 4 Rawle, 229; Reed *v.* Stanley, 6 W. & S., 369; Brown *v.* Arrott, 6 W. & S., 416; Persch *v.* Quiggle, 7 P. F. S., 262; Notes to Keech *v.* Sanford; Fox *v.* Maereth, 1 Leading Cases in Equity, 237; Young *v.* Hughes, 32 N. J. Eq., 372.

2. An agent cannot act in a divided capacity; he cannot be the agent, in case of a sale of property, of both the vendor and vendee, or even if not acknowledged to be in fact the agent of both, he cannot act in the *interest* of both; his services are entirely and solely due to the one who engages him: Dunlop *v.* Richards, 2 E. D. Smith, 181; Farnsworth *v.* Hemmer; 1 Allen, 494; *ex parte* Bennett, 10 Vesey Jr., 380; Walker *v.* Osgood, 98 Mass., 348; and Everhart *v.* Searle, 21 P. F. S., 256. in which Chief Justice THOMPSON, delivering the opinion, adopted the authority of Holy Writ in saying, "No man can serve two masters."

A real estate broker is the agent of the vendor: Earps *v.* Cummins, 4 P. F. S., 394.

3. Faithful service is a condition precedent to the right of a servant to recover wages: Singer *v.* McCormick, 4 W. & S., 265.

Mr. Justice GORDON delivered the opinion of the court, April 19th, 1886.

It is certainly a correct rule of law, as held in Clendenon *v.* Pancoast, 75 P. S. R., 213, that a real estate broker's commissions are earned whenever he has procured a buyer who will comply with the conditions fixed by his principal for the property proposed to be sold. But it is to be understood that this rule depends not only on the fact that the broker is to be regarded as the agent of the seller, but that, as such agent, he acts with the utmost good faith towards his principal, and if he does not so act he is entitled to nothing. In the case in hand, however, were we to consult the evidence alone, giving no attention to the allegations of the plaintiff, we might be compelled to regard him rather as the agent of the vendee than of the vendor. George Patterson, the defendants' testator, had a property to sell, for which he agreed to take one hundred and forty thousand dollars; thirty thousand dollars in hand, and the balance to be secured by bonds and mortgage. Under these conditions the matter was placed in the hands of the plaintiff as Patterson's broker. He found a purchaser, and that purchaser was W. W. Harding, a perfectly responsible person, but through fear of competition, should his name appear in the transaction, the negotiation, so far as Patterson was concerned, was conducted in the name of Thomas Natt, Harding's clerk. The latter was to be the ostensible buyer, Harding to advance the hand money, and take an assignment of the deed after it had been executed by Patterson.

The plaintiff himself testifies; "I had nothing to do with Mr. Natt until the agreement was produced. Then Mr. Harding said Mr. Natt would represent him, for special reasons, in signing."

Now, it is hard to conceive why the name of Harding, the real vendee, should have been concealed from Patterson, unless the intention was to subserve the purposes of the former. It is urged, that whether the sale was made in the name of a real or fictitious purchaser, it could make no difference to the seller; in either case he would get his hand money, and though admittedly the bonds, in the latter event, would be worthless, yet as the property itself was sufficiently valuable to secure the payment of the mortgage, the bonds were of no consequence. This argument, if such it may be called, is met by the pertinent inquiry; by what authority did the agent in this matter assume to judge for his principal? It does not require the discernment of a very acute casuist to perceive that it was Pratt's duty to submit this whole matter to Patterson and allow him to determine whether he would prefer as a

purchaser the responsible or irresponsible party; whether he would accept the bonds and mortgage of Natt rather than those of Harding. Good faith forbade the concealment of an arrangement intended for the advantage of the buyer rather than that of the seller.

But passing this; when we come to that part of the transaction, in which, at the instance of Harding, the plaintiff carried to Patterson a bid 'of. one hundred and thirty-five thousand dollars for the property, when, in fact, he, the plaintiff, and Harding had, as between themselves closed the sale at one hundred and forty thousand dollars, we can no longer regard Pratt as the agent of Patterson. The learned and ingenious counsel for the plaintiff has endeavored to excuse and palliate the conduct of his client, but excuses and palliations cannot alter plain and obvious facts, or modify fixed rules of law. This conduct can only be excused on the ground of ignorance, and ignorance which caused him unwittingly, perhaps, to seem willing to tamper with the interests of his principal, in favor of the person with whom, as a professed agent of that principal, he was dealing. But not the less, had Patterson, on the discovery of this.fact, the right to dissolve, as he did, the relation between himself and Pratt, and treat the whole transaction as fraudulent and void.

The judgment is affirmed.