# S. V. Thompson Company *v.* Goldman, Appellant.

*Principal and agent—Real estate broker—Commissions—Securing purchaser.*

1. Where the owner of a licensed hotel gives a real estate broker the right to sell the licensed business and furniture, fixtures and personal property incident thereto, and a lease for years of the real estate itself, and further agrees to give the broker ten days' written notice of an intention to withdraw the sale of the business from the agency of the broker, and the owner sells the property to a purchaser without any aid whatever from the agent, and without having revoked the agency, the agent will be entitled to recover compensatory damages for money expended and time and labor devoted towards the accomplishment of the sale, even if he has not brought a purchaser to his principal.

2. In such a case the agent is not entitled to the full commissions specified in the contract of agency by entering into an agreement with a purchaser to sell, not only the licensed business, with its incidents and the lease of the real estate, but also the real estate itself; nor will he be entitled to his commissions if the agreement of sale is conditional upon the proposed purchaser securing a loan of an amount specified, if there is no evidence to show that purchaser had the financial ability to borrow such a sum and satisfactorily secure its repayment.

3. In an action by the agent against the owner to recover his full commissions, the plaintiff must show that he had procured for the defendant a party with whom the defendant was satisfied, and who actually contracted for the property at a price acceptable to the owner; or that it was through his efforts that the purchaser was secured, to whom the defendant after he wrongfully took the matter out of the agent's hands, made the sale; or that even if he had not secured any binding contract from the proposed purchaser, he had actually produced to his principal a purchaser able and ready to perform his part of the proposal, so that the failure to complete an actual sale resulted alone from the fault or inability of the principal.

Argued May 10, 1909. Appeal, No. 24, April T., 1909, by defendant, from judgment of C. P. Armstrong Co., June T., 1907, No. 204, on verdict for plaintiff in case of S. V. Thompson Company v. D. A. Goldman. Before RICE, P. J., PORTER, HENDERSON, MORRISON, HEAD and BEAVER, JJ. Reversed.

Assumpsit to recover commissions for the sale of real estate. Before PATTON, P. J.

The court charged in part as follows:

This is what is known in law as an action of assumpsit, brought by S. V. Thompson & Co. against David A. Goldman, to recover the sum of $612.50, with interest from April 16, 1907, being the amount that the plaintiffs claim is due them by reason of their having acted as real estate agent in the sale of Mr. Goldman's hotel property, known as the Commercial Hotel, in the borough of Ford City. On the part of the plaintiff, they offered in evidence a written contract, dated April 16, 1907, and signed by D. A. Goldman, in which he agrees and says, "I have this day placed in the hands of S. V. Thompson Co., hotel business, described in detail below, for sale, and hereby constitute them my sole agents, with the exclusive right to dispose of the same at the stipulated price of $12,500, or, such sum as may be agreed upon later.

" For their services, I agree to pay them a commission of five per cent. on the sale of the same. And I further agree to give them ten days' written notice of my intention to withdraw the business from their agency."

Then follows paragraphs, giving all the description of the property. There is no dispute in this case that Mr. Goldman executed this contract with the plaintiff. Mr. Thompson is called on the witness stand, and he testified that it was in pursuance of that contract that his company proceeded to advertise this property and to hunt for purchasers, and that in pursuance thereof on May 21, 1907, the S. V. Thompson Company entered into an agreement with a certain Wilson & Shaffer to sell them this particular property, for the sum of $12,250. So far as that is concerned there is no dispute in the case.

The first dispute arises in this way. You will notice the first contract was that Mr. Goldman authorized these people to sell for the sum of $12,500. The agents entered into a contract to sell for $12,250, dropping $250, while the contract called for a sale at $12,500, or such sum as might be agreed upon later. If I recollect the testimony, but it is entirely for the jury to say how this is, the plaintiff testified that when he sold this property to Wilson & Shaffer for $12,250, that Mr. Goldman agreed to that, and consented to that reduction. If I re-

call the testimony correctly, Mr. Goldman, so far as that is concerned, does not deny that he did agree that they should sell for $12,250. If that is the testimony, then that difference would be brushed away, but if you find that Mr. Goldman denies that, then it would be a question for the jury to determine whether Mr. Thompson is telling the truth or Mr. Goldman is telling the truth as to that particular.

The second difference, set up by the defendant, is that Mr. Goldman only authorized these agents to sell the furniture, fixtures and good will of the hotel, and that their agency did not include authority to sell the real estate. [From the reading of the article of agreement, that would seem to be true, and when these men, composing the S. V. Thompson Company came to sell to Wilson & Shaffer, they not only included the furniture, fixtures and good will, but they also included the real estate. Now, that would be a very serious discrepancy if there was nothing else in the way to explain that. Mr. Thompson is called, and also Mr. Hunter, on the part of the plaintiff, and they say that this second agreement was submitted to David Goldman at Pittsburg, when they came to talk this matter over, and that after an examination of it, he said that it was all right, and that he was satisfied with the contract. If that is true, then there evidently was a misunderstanding of the paper, or the paper was not drawn up correctly.] [1] [If this paper was drawn up between the S. V. Thompson Company on the one side, and Wilson & Shaffer on the other, and if that was submitted to Mr. Goldman, and he, in the presence of Mr. Thompson and Mr. Hunter, said that the agreement was all right, and for them to go ahead with it, and he would stand over it, then Mr. Goldman could not now at this late day, repudiate that contract.] [2] [Mr. Goldman admits that the contract was shown to him, but he said that he did not read it, and paid no attention to it. Gentlemen of the jury, there is another discrepancy, that you will have to decide. If you believe that, taking all the surrounding facts and circumstances into consideration, that these two men, Mr. Thompson and Mr. Hunter, showed this agreement to Mr. Goldman, and he said that it was all right, and he understood it, then he could not at this late

day escape from paying his commission by setting up such a difference as that.] [3]

A third defense set up by Mr. Goldman is, that this sale was not completed, that although the Thompson Company made an agreement to sell this property to Wilson & Shaffer for $12,500, that Wilson & Shaffer never paid the money. It is an admitted fact that Wilson & Shaffer did not pay the money. Hence, if there was nothing else in the way, the Thompson Company could not recover their commission for something they did not sell, but the contention of the plaintiff is this, they say, and you will notice in this first contract, Mr. Goldman agrees to give them ten days' written notice of his intention to withdraw the sale of that property from their agency. Now, it is admitted that Mr. Goldman never did give them any written notice that he withdrew that property from their agency.

[Gentlemen of the jury, we instruct you that if you believe that testimony, and it is uncontradicted, that Mr. Goldman never did withdraw this property from their agency, but turned around and on May 7, sold it to Mr. Morrow, and, therefore, put it out of his hands to comply with his contract with the S. V. Thompson Company, then the plaintiff could recover, notwithstanding that the property was not sold to Wilson & Shaffer, because Mr. Goldman, having made a contract of that kind to not withdraw the property from the hands of these men without ten days' written notice, could not after they had gone to the expense of hunting and finding a purchaser, sell to another man, and thereby deprive them of their commission for their labor.] [4]   He could not take advantage of his own wrong, and his own fault, and thereby deprive these men of their commission. If he wanted to do that he should have served written notice on them that he withdrew the property from their agency, and that would have given them ten days in which to complete their sale. [If he had done that Mr. Goldman would not have to pay them their commission, but if he did not withdraw the property from their agency, then they would be entitled to their commission, notwithstanding the fact that they did not complete the sale.] [5]

Verdict and judgment for plaintiff for $642.50. Defendant appealed.

*Errors assigned* among others were (1–5) above instructions, quoting them.

*R. L. Ralston,* for appellant.—The court cannot say as a matter of law that the broker if given the additional ten days would have earned his commission, and that being deprived of them he has suffered damages to the extent of the commission: Adams Express Co. v. Egbert, 36 Pa. 360; Blackstone v. Buttermore, 53 Pa. 266; Jaekel v. Caldwell, 156 Pa. 266; Hill v. Jones, 152 Pa. 433; Black v. Pentony, 30 Pa. Superior Ct. 38; Kelly v. Marshall, 172 Pa. 396; Kifer v. Yoder, 198 Pa. 308.

A broker is not entitled to commissions if he secures a conditional purchaser, and his authority is revoked before a sale is made: Vincent v. Woodland Oil Co., 165 Pa. 402.

In an action to recover commission for the sale of real estate there can be no recovery where the plaintiff was not the efficient cause of effecting the sale, or of bringing the purchaser and owner of the property together: Johnston v. Seidel, 150 Pa. 396; Burchfield v. Griffith, 10 Pa. Superior Ct. 618; Pierce v. Truitt, 21 W. N. C. 569; Clark v. Lindsay, 7 Pa. Superior Ct. 43.

*Floy C. Jones,* for appellee, cited: Seabury v. Fidelity Ins. Trust & Safe Dep. Co., 205 Pa. 234.

OPINION BY HEAD, J., November 8, 1909:

As the case of the plaintiffs is presented in the pleadings and record, their right to recover the amount of the commission represented by the verdict was rested on their ability to establish two propositions of fact: (a) That the defendant had entered into a contract with them, by the terms of which he obliged himself to pay upon certain conditions the sum sued for; (b) that the conditions necessary to make that undertaking an absolute one had been complied with by them.

As to the first proposition they experienced no difficulty be-

cause it was admitted that such a contract had been executed, and as it had been reduced to writing and was offered in evidence, there is no room for dispute as to its terms. By this agreement the plaintiffs were given the right to sell and dispose of certain property of the defendant, to wit: the hotel business he was conducting as a licensed landlord, and furniture, fixtures and personal property in and on the licensed premises, and a lease for years of the real estate itself. The agreement then declared "for their services I agree to pay them a commission of five per cent on the sale of the same."

Now it is an undeniable fact in the record before us that the only sale of the property covered by the agreement actually made and completed was made by the defendant himself to one W. H. Morrow. It is not contended that the plaintiffs had anything whatever to do with this sale. They had never had any negotiations with Morrow. It was not through their efforts, or by reason of any information derived from them, directly or indirectly, that the purchaser and seller were brought together. This negotiation was begun and completed without the knowledge of the plaintiffs and received no aid from their efforts. They cannot, therefore, recover the stipulated commission because of anything they did in connection with the actual sale of the property and the transfer of the title from the defendant to Morrow.

Numerous decisions in Pennsylvania have construed contracts similar to the one before us, and an examination of these cases will show that the plaintiffs, under certain conditions, might still recover the amount of the commission claimed notwithstanding the facts already recited. In Keys v. Johnson, 68 Pa. 42, it is said: "A broker becomes entitled to his commissions whenever he procures for his principal a party with whom he is satisfied, and who actually contracts for the purchase of the property at a price acceptable to the owner. . . . When he—the broker—has commenced a negotiation with a purchaser, the owner cannot, while such negotiation is pending, take the matter into his own hands and complete it either at or below the price first limited, and then refuse to pay the commissions." In Middleton v. Thompson, 163 Pa. 112,

Mr. Justice MITCHELL, after reviewing a number of the decisions on the subject, says: "These cases show clearly that a binding contract is not essential where the party produced by the broker stands ready to perform his part of the proposal, and the failure to do so occurs through the fault or inability of the principal."

Was there any evidence, then, in the light of these decisions to warrant the jury in finding that the services contemplated by the agreement had been performed by the plaintiffs?  Their contention is that they had negotiated a sale with an entirely different party, to wit: Wilson & Shaffer, of Franklin.  In support of this contention they offer in evidence a written agreement entered into between them, acting for their principal, and the said Wilson & Shaffer.  An examination of this agreement standing alone would apparently show that when it was made the plaintiffs had wholly misconceived the scope and extent of their own authority, because in that instrument they undertook to sell and convey not merely the hotel business with the personal property, lease, license, etc., which they were authorized to sell, but also to sell and convey in fee simple the real estate itself which they agreed they had no right to offer. Thus on the face of the paper, introduced by themselves to support their allegation that they had performed their part of the contract, it appeared that they had greatly exceeded their authority and placed their principal in a position he had never intended to assume.

To avoid this difficulty the plaintiffs themselves testify that their contract with Wilson & Shaffer did not in fact mean what its written language undeniably imports; that the mistake occurred by reason of the use of a printed form of contract designed for use only in sales of real estate, and that in fact Wilson & Shaffer thoroughly understood that they were agreeing to buy and pay for only the hotel business, etc., which the defendant had authorized the plaintiffs to sell.  There was evidence, therefore, from which the jury could find that so far as the plaintiffs are concerned, they did not intend to do anything more than they were authorized to do.  It is to be noted, however, that there is no evidence from either Wilson or Shaf-

fer as to what their understanding was, and the learned court· below and the jury could not in the absence of such testimony reach any conclusion binding on them that they had ever contracted to pay the price named for the hotel business and fixtures merely.

But passing this difficulty and looking further at the terms of that contract, it appears that Wilson & Shaffer entered into no absolute obligation to buy anything. Their undertaking to purchase whatever might be construed to be the subject-matter of their written contract was conditional on their ability to secure a loan of $7,250, to be repaid in two annual installments. There is no evidence to show whether or not they had the financial ability to borrow such a sum of money and satisfactorily secure its repayment, and the assertion that they could have secured such a loan and thus become bound by an absolute contract to purchase something rests on nothing more than conjecture.

It appears then that the plaintiffs were in no way concerned with the sale that was actually made and did nothing in connection with that transaction. It is equally clear that they had commenced no negotiation with the purchaser who actually completed the sale, nor did they produce to their principal a purchaser able and ready to perform his part of the proposal, so that the failure to complete their sale resulted solely through the fault or inability of their principal. As the record now stands, therefore, they have not shown a case where under any of the decisions cited they can successfully assert their right to recover the commission provided for in their agreement.

But it does not follow that because the plaintiffs were not in a position to recover in bulk the amount of the commission, they were not entitled to maintain their action at all or to recover any sum. In his written agreement with them the defendant had plainly stipulated and agreed that he would "give plaintiffs ten days' written notice of his intention to withdraw the said business from their agency." This covenant of his contract the plaintiffs had a right to expect he would perform, as their right to sell was to be exclusive until the defendant

saw fit to revoke their commission in the manner named. Failing one purchaser, they might have secured another before the defendant could lawfully withdraw his property from their agency. The plaintiffs testify that there was a clear breach of this covenant on the part of the defendant, and their testimony was ample to carry that question to the jury, and, if believed, to warrant a finding in their favor. For a breach of that covenant they would be entitled to recover compensatory damages.

In Blackstone v. Buttermore, 53 Pa. 266, it is said: "The interest of the agent was only in his compensation for selling, and without a sale this is not earned. A revocation could not injure him. If he had expended money, time or labor, or all, upon the business intrusted to him, the power itself was a request to do so, and on a revocation would leave the principal liable to him on his implied assumpsit." In Black v. Pentony, 30 Pa. Superior Ct. 38, Mr. Justice ORLADY said: "If they—the principals—withdrew for a good reason, as explained in Cronin v. Sharp, 16 Pa. Superior Ct. 76, they would be liable for nominal damages only. However, if they did not act in good faith and withdrew from the transaction as a mere subterfuge in order to secure a higher price, or to relieve themselves from the payment of the plaintiff's claim, he was entitled to proper compensation for his time, labor and expenses incurred in good faith in the defendants' interest." In Kifer v. Yoder, 198 Pa. 308, it is said: "It is always incumbent upon a broker seeking to recover a commission, to prove either that a sale was made to the party whom he procured as a purchaser, or that the purchaser was able and willing to buy, and the failure to make an actual sale was through no fault of the broker or his customer. . . . A real estate broker is employed as the agent of the vendor, for the purpose of effecting a sale. Until he accomplishes the object of his employment he is not entitled to his commission."

If then, relying on the covenant in their agreement, the plaintiffs had incurred expense by way of advertising the property, seeking purchasers by correspondence or otherwise, or devoted time, labor or money towards the accomplishment of

the object contemplated by their agreement, they would be entitled to such a verdict as would make good any loss sustained by reason of the breach of the covenant referred to. The case, therefore, was tried upon a mistaken principle and must go back to be retried along the lines indicated in this opinion.

If the plaintiffs are to recover the commission named in their contract for a sale of the property, they must show that they had procured for the defendant a party with whom he was satisfied, and who actually contracted for the property at a price acceptable to the owner; or that it was through their efforts that the purchaser was secured to whom the defendant, after he wrongfully took the matter out of their hands, made the sale; or that even if they had not secured any binding contract from a proposed purchaser, they had actually produced to their principal a purchaser able and ready to perform his part of the proposal, so that the failure to complete an actual sale resulted alone from the fault or inability of the principal. If they are not thus able to show a state of facts upon which they may rightfully assert that they had done everything contemplated in their contract with the defendant, then their right to recover must be confined to compensatory damages for the alleged breach by the defendant of his covenant not to withdraw the sale of the property from their agency until after ten days' written notice of his intention so to do.

The principle controlling the main question involved in this appeal is thus stated by Mr. Justice ELKIN in the recent case of Turner v. Baker, 225 Pa. 359, reported since the foregoing opinion was written: "It is contended that appellant was constituted the exclusive agent of appellee to sell his hotel property, and that any sale made while the contract of exclusive agency remained in force, either through the efforts of the broker or by the principal, entitles the broker to recover his commission although he was not instrumental in effecting the sale. In some jurisdictions the rule does seem to be laid down as broadly as above stated, but this is not the law in Pennsylvania. . . . The appellee did constitute appellant his sole agent to sell a hotel property at a stipulated price, and agreed

to pay him a commission for his services.   He further agreed that the broker should have the exclusive right to dispose of the property and that written notice should be given ten days before the withdrawal of the business.   The broker did not make a sale, the principal did.   The principal did not give the ten days' withdrawal notice as required by the contract which the broker insists was still in force when the sale was made by the principal.   The right to recover the commission under these circumstances is asserted on two grounds, first, that a sale made by any person while the contract remained in force entitled the broker to the stipulated commission, and, second, that the commission was earned by the broker producing a purchaser who was ready, able and willing to buy the property. The first position cannot be sustained for the reasons hereinbefore stated.   The second contention depends upon the facts. If in point of fact the broker had produced a purchaser ready, able and willing to buy upon the terms of the contract, and while it remained in force, he would clearly be entitled to his commissions under the rule of all the authorities.   This is the pinch of the case and it is almost entirely a question of fact."

Judgment reversed, and venire facias de novo awarded.