# Greenblatt *v.* Fox, Appellant.

*Principal and agent—Real estate broker—Commissions.*

1. In an action by a real estate broker to recover commissions, a verdict and judgment will be sustained where the evidence tends to show that the defendant employed the plaintiff to sell real estate, that plaintiff secured a purchaser who signed a contract with the de-

fendant; that on the day the contract was signed defendant gave plaintiff a writing in which he agreed to pay a sum stated "on completion of the transaction entered into this day;" that the purchasers although reliable did not complete the purchase, and the defendant made no effort to compel them to do so.

2. In such a case where the person who signed the contract was not the real purchaser, but merely signed as the attorney in fact of a straw man for a firm of undisclosed real estate dealers, but there is nothing in the evidence to show that the plaintiff knew this fact, although the attorney in fact signing the contract was his own son, the plaintiff will not be deprived of his commissions on the ground that he concealed from his principal material information.

Argued Oct. 12, 1914. Appeal, No. 58, Oct. T., 1914, by defendant, from judgment of C. P. No. 4, Phila. Co., Dec. T., 1912, No. 3,749, on verdict for plaintiff in case of Harry Greenblatt v. Joseph M. Fox. Before RICE, P. J., ORLADY, HEAD, HENDERSON, KEPHART and TREXLER, JJ. Affirmed.

Assumpsit to recover commissions on sale of real estate. Before WILLSON, P. J.

At the trial it appeared that plaintiff was employed by defendant to secure a purchaser for a row of houses. On June 14, 1912, through plaintiff's efforts, defendant signed a contract of sale for the houses, which provided for a settlement within sixty days and a deposit of $1,000, the selling price being $57,500. This agreement was signed as follows:

FRANK MONTGOMERY,      JOSEPH M. FOX, [SEAL.]
H. GREENBLATT.      LOUIS GREENBLATT,
            Attorney in fact for M. Bristol.

Louis Greenblatt was plaintiff's son. M. Bristol was a man of straw for the real estate firm of Mastbaum & Fleischer. When the contract was signed defendant gave plaintiff the following writing:

"JUNE 14, 1912.

"DEAR SIR:—On completion of the transaction entered into with you this day, I agree to pay you one per-

centum (1%) on the purchase money of houses that is the sum of five hundred and seventy-five ($575) dollars.

                                                  "Very truly,
"To Mr. H. Greenblatt.                        "J. M. Fox."

Mostbaum & Fleischer never completed the purchase, and $1,000 paid as a deposit was forfeited. There was no evidence to show that plaintiff knew that M. Bristol was not the real purchaser.

The court charged in part as follows:

[Well, I do not know that it can be said that there is any dispute in this case about the plaintiff having brought to the defendant the man with whom a contract of sale was entered into. It is true that contract was not made personally with the purchaser who is named in it as being the purchaser. It is true that that contract was signed by an attorney in fact. There is nothing in the case to show—there is no controversy about the question as to whether or not the attorney in fact, Louis Greenblatt, had authority, and proper authority, from the person whose attorney he was to enter into the agreement. It may be assumed, I think, that he had such authority.] [2]

[Now, who was responsible for the transaction not being completed? If it was the defendant who was responsible for it, if he chose to say, "I will not carry out this contract," if he subsequently received a better offer and so was unwilling to make conveyance of the property to the purchaser named in that contract, why, of course, he could not charge that upon the plaintiff. There is no evidence to show what the reason was that this contract was not carried into execution according to the expectation of the parties and the contract of the parties as expressed in the articles of agreement. There is not any evidence that the purchaser named in that contract ever declined to take and pay for the property. It does not follow because a man is a barber that such a contract could not be made, and if

the fact was, as you would infer from the testimony of one of the sons of the plaintiff, that he was put forward as representing other people, that would not necessarily show that the contract was not one which could not be enforced.   Contracts of that sort, in which people are put forward as representing others, although they may be called straw men, the contracts are not necessarily invalid.   They may be executed in good faith and carried out in good faith.] [3]

[Now, it is possible to interpret that letter of June 14, 1912, as referring to a condition of things which had already taken place, by "on the completion of the transaction." I am not undertaking to say to you what that letter means. I will leave it to you to determine. But there is certainly a possible interpretation, which you may or may not give to it, which will amount to this, that the completion of the transaction was the making of the agreement, and that that agreement having been made, the right of the plaintiff to commissions at once came into existence.] [4]

[Now, the position which the defendant takes in regard to that is, that the words "on completion of the transaction" referred to the money being paid, the property being transferred and the $56,500 which remained of the purchase money had passed into the hands of the defendant.   Even if that were a proper interpretation to be given to that letter, it would still remain true that if the defendant was the one that caused the failure to complete the transaction in that way, according to that view of the case he could not put the results, the responsibility of the failure to complete the transaction, upon the plaintiff.   As I have already said to you, the evidence in the case does not throw any light whatever upon the question as to whether it was the defendant who caused the contract not to be carried out, or whether it was Bristol, who was named in the agreement as the party purchasing the property.] [5]

53, (1915).]　　Charge of Court below—Opinion of the Court.

Verdict and judgment for plaintiff for $631.64. Defendant appealed.

*Errors assigned* were (2–5) above instructions, quoting them.

*E. Spencer Miller*, for appellant.—It was the duty of the court to construe the contract: Henderson v. Sonneborn, 30 Pa. Superior Ct. 182; Elliott v. Wanamaker, 155 Pa. 67.

The plaintiff forfeited his right to a commission by deceiving his principal as to the personality of the contractor to purchase: Pratt v. Patterson, 12 Phila. 460; Pratt v. Patterson, 112 Pa. 475; Wilkinson v. McCullough, 196 Pa. 205.

*Bertram D. Rearick*, with him *Bernard A. Illoway*, for appellee.—The commission was earned: Clendenon v. Pancoast, 75 Pa. 213; Seabury v. Fidelity Ins. Trust, etc., Co., 205 Pa. 234.

OPINION BY KEPHART, J., February 24, 1915:

Two questions are involved in this appeal: Was the interpretation of the contract for the court, and did the plaintiff forfeit his right to commissions for services? The defendant employed the plaintiff to procure a purchaser for his real estate and for his services agreed to pay him a commission of one per centum on the contract price. The plaintiff procured the purchaser, who entered into a contract of sale with the defendant and paid $1,000 on the purchase price. At the time the contract was executed, the defendant delivered to the plaintiff a letter, which defendant says controls the contract in question, and specifies the time when the commissions were earned. The letter is as follows: "On completion of the transaction entered into with you this day, I agree to pay you one per centum (1%) on the purchase money of houses that is the sum of Five

Hundred and Seventy Five ($575) Dollars." The defendant argues that the word "transaction" had reference to the agreement of sale and that the payment of the commission should only be made on the consummation of the final settlement of the contract of sale, which, not being done, the plaintiff was not entitled to receive any commission. The plaintiff objects to this conclusion and states that this language did not express the understanding between the parties and in explanation thereof he offers testimony to prove that his contract was to produce a purchaser, which he had done, and the production of this purchaser, with the execution of the contract of sale, was the completion of the "transaction" referred to in the letter and that the letter was given in the nature of a duebill. The controversy as to what was the understanding between the parties, in the light of the oral testimony, was for the jury: Elliott v. Wanamaker, 155 Pa. 67. They found for the plaintiff, and in so doing they determined as a fact that the plaintiff had done all that was required of him when he produced the purchaser who entered into the contract of sale and paid a part of the purchase money, and that the letter did not interfere with or disturb his right to commission but was in affirmance of that right. Assuming that the defendant's theory would be the correct one, that the proper interpretation of this contract was that the plaintiff should only secure his commission when the money was all paid in final settlement of the contract of sale, in what position does defendant find himself by his failure to make some effort to complete his contract? He had received a portion of the purchase money. The purchaser was obliged to make final settlement. A deed covering the property had been given to the defendant for execution. He gives no reason for his refusal to complete the deal. There is no evidence that the purchaser, though not the ostensible purchaser, was not a reliable one. The mere fact that he was a barber would not justify defendant in

assuming that it was useless to ask him to pay the balance of the purchase price. When this agreement was made and the hand money paid, it was necessary for the defendant to do something in affirmance of that contract before he would be in a position to deny the plaintiff's right to recover. This matter was wholly within his power. The plaintiff had done everything that he could to forward the sale of the property; he was powerless to give any further aid in the matter when the defendant refused or neglected to act. The letter and all testimony was submitted by the learned court below in a charge that affords the appellant no ground for complaint. The third, fourth, fifth and sixth assignments of error are overruled.

The written contract was signed for the purchaser by his attorney in fact, a son of the plaintiff. It is admitted that he was not the real purchaser but was acting as a "straw man" for a real estate firm. The plaintiff was the agent of the defendant. It was his duty to impart to his principal any information that came under his observation that would in any way affect his principal's business, so that his principal might determine whether the deal should be consummated or not. A special trust and confidence is reposed in the agent and the utmost good faith is required of him. He represents the owner and stands in his place. Proof of fraud on the part of the agent is not necessary. It matters not that the omission to inform the principal was unintentional and no injury had been done. The rule is intended to prevent wrong from being done. Where one employs another to act as agent he "disarms the vigilance" of his principal and the agent is afforded peculiar facilities for obtaining confidential information. The principal's interest then must be safely guarded: Pratt v. Patterson's Executors, 112 Pa. 475; Wilkinson v. McCullough, 196 Pa. 205; Everhart v. Searle, 71 Pa. 256; Linderman v. McKenna, 20 Pa. Superior Ct. 409; Del. County Trust Co. v. Lukens, 38 Pa. Superior Ct. 509; Clark v. Phila-

delphia, 46 Pa. Superior Ct. 253. The real purchasers had a special object in having their names concealed. It is no answer to say that this defendant, the principal, asked no question when he signed the agreement. Herein the confidence in his agent disarms any suspicion. We do not know what reasons might have been covered by the concealed movements of the real purchasers. It is no answer to say that the deal was cash at the end of sixty days and that the defendant was paid $1,000 which was forfeited. It is not difficult to surmise many conditions which would have made it quite cheap to have had this property out of the market for sixty days. We do not say that this is wrong on the part of the real estate agency. It may be properly within the legitimate scope of an active real estate business, but what is here complained of is that the owner's agent should in no way be a party to it, and should not fail to communicate any detail that he might know to his principal. Did the agent, the plaintiff, know? He testifies that he did not. The attorney in fact states that he did not inform his father. We cannot as a matter of law say that it was the duty of the agent to have inquired from his son or any attorney in fact or purchaser whether he was purchasing for himself or another party. We cannot presume that knowledge came to the plaintiff by virtue of his relationship with the attorney in fact. There being no evidence from which the jury could infer knowledge on the part of the agent, that the person who signed the agreement was not the real purchaser, we are compelled to overrule the first, second and seventh assignments of error.

Judgment affirmed at the cost of appellant.