CHARLES S. STUART *vs.* EDWARD A. McETTRICK.

Norfolk. March 9, 1922. — September 11, 1922.

Present: RUGG, C.J., BRALEY, DE COURCY, CROSBY, & CARROLL, JJ.

*Broker*, Commission. *Contract*, Performance and breach.

A real estate broker, after seeking to get the consent of the owner of a garage to sell his business, was told by the owner that he would sell for $22,000, paying a commission of $2,000 to the broker and to "see what you can do and then let me know." The broker then procured to be signed by a prospective customer an agreement to purchase for $20,000, subject to a condition "that the . . . business will show a net profit of $600 . . . per month or approximately $7,000 a year;" and offered it for signature to the owner, who, although he stated that he did not know the amount of the net profits of the business without an examination of his books and refused to accept a deposit on the contract until such examination was made, finally signed the agreement upon the broker's agreeing to accept $1,000 as his commission. Subsequently the prospective purchaser refused to go through with the sale and the net profits of the business were found to be less than $600 per month or $7,000 per year. In an action by the broker against the owner for $1,000, alleged to have been earned as a commission, a verdict for the defendant was ordered. *Held*, that the verdict rightly was ordered, the plaintiff not having found for the defendant a customer ready, able and willing, unconditionally, to buy the business for $20,000 and take it as he found it.

CONTRACT, with a declaration as amended in which the plaintiff claimed a commission of $1,000 for procuring a customer for the purchase of the defendant's garage and business at 29 Webster Street in Brookline. Writ dated June 10, 1919.

In the Superior Court, the action was tried before *Morton*, J. There was evidence tending to show that the plaintiff's son in May, 1919, inquired of the defendant if he would sell the garage

business at the Boulevard Garage, located on Webster Street in Brookline; that at the first interview the defendant stated that he "was not on the market at that time;" that at a subsequent interview the defendant stated to the plaintiff's son that "he would sell it if he got $22,000 for the business;" that there was some talk as to commission and the defendant was told that the plaintiff's commission was ten per cent; that the defendant was asked if the profits of the business would amount to $600 per month and that he said "he was not sure until he went over the books;" that the defendant was told that the plaintiff "had a party in view who might buy the garage" and that the defendant said, "Well, you see what you can do and then let me know;" that thereafter the plaintiff's son saw one Carter and procured an agreement signed by him which, in material provisions, read as follows:

"Whereas the party of the first part [the defendant] agrees to sell to the party of the second part [Carter] the garage business, stock, and fixtures all now located at No. 29 Webster St., Brookline, Massachusetts, together with a lease on said building which has a term of about eight (8) years to run, for the sum of Twenty thousand dollars ($20,000.) cash.

"Whereas the party of the second part agrees to buy from the party of the first part the above mentioned business, stock and fixtures for the sum of Twenty thousand dollars ($20,000.) which is to be paid as follows: — One thousand dollars ($1,000.) is to be paid to the Columbia Real Estate Co., of Boston, Massachusetts, on or before May 28th, 1919, as a deposit to bind this agreement, and the balance of Nineteen thousand dollars ($19,000.) on or before June 10th, 1919.

"Whereas the Party of the First Part agrees with the party of the second part that the above mentioned business will show a net profit of Six Hundred dollars or over ($600.) for the past three months (meaning Six hundred dollars ($600.) per month or approximately Seven Thousand dollars ($7,000.) a year,) and

"Whereas the party of the second part agrees to buy the above mentioned business on the terms and provisions as mentioned above providing the business is as represented, if not this deposit of One Thousand dollars ($1,000.) is to be refunded to the party of the second part upon demand.

"Signed and sealed this twenty-sixth day of May, in the year of One thousand nine hundred and nineteen."

There was evidence tending further to show that the plaintiff's son then brought the agreement, signed by Carter only, to the defendant; that he objected to the price; that there were further negotiations between the defendant and the plaintiff's son which resulted in the defendant saying that, if the plaintiff would take $1,000 as a commission, the defendant would "let the sale go through;" that thereafter there were negotiations between the plaintiff's son, the defendant and Carter, the defendant refusing to accept a deposit from Carter until he could ascertain from his books as to the profits of the garage business for the three months then last past; that finally the defendant signed the agreement upon the plaintiff agreeing to accept $1,000 as his commission, and that thereafter Carter refused to go on with the sale. The defendant then discovered that the profits from the garage business were not $600 per month for the three months then last past. The defendant at first gave the plaintiff power of attorney to enforce the agreement against Carter, but later revoked that power.

At the close of the evidence, the judge ordered a verdict for the defendant; and the plaintiff alleged exceptions.

*J. M. Graham,* for the plaintiff.

*Joseph Wentworth,* for the defendant.

BRALEY, J. The defendant owning a garage told the plaintiff, a real estate broker, that if he procured a purchaser who would pay $20,000 for the property he should receive a commission of $1,000. The plaintiff after negotiations succeeded in effecting a sale to one Carter on terms shown by a contract in writing executed on May 26, 1919, by Carter and the defendant. While the purchase price was $20,000, of which $1,000 was to be paid on or before a date named, the contract provides "that the above mentioned business will show a net profit of Six Hundred Dollars . . . per month or approximately . . . Seven Thousand Dollars . . . a year," and that Carter "agrees to buy . . . providing the business is as represented, . . ." But, even if the jury would have been warranted in finding on the evidence introduced by the plaintiff that at various interviews between the plaintiff and the defendant, as well as with Carter during the period preced-

ing its date, the agreement expressed the mutual understanding of the contracting parties; and the sale was expressly made dependent upon the condition previously quoted. The plaintiff does not contend, nor is there any evidence to show, that the annual net profit would be even approximately the amount named in the agreement.

The question of the exclusion in evidence of a memorandum made by the plaintiff's son showing the gross income during the months of April and May not having been argued is to be treated as waived, and, never having made a sale to a customer ready, able and willing, unconditionally, to buy for $20,000 and take the garage as he found it, the verdict for the defendant was rightly ordered. *Clark* v. *Bonner*, 217 Mass. 201. *Woods* v. *Matthews*, 224 Mass. 577. *Bruce* v. *Meserve*, 228 Mass. 463. *Doten* v. *Chase*, 237 Mass. 218.

*Exceptions overruled.*