## Perry v. Spellman

*Reilly & Fogwell*, for plaintiff.
*MacElree, Platt & Marrone*, for defendants.

HARVEY, J., June 6, 1960.—Plaintiff brought suit in assumpsit claiming a broker's commission by virtue

of an oral agreement made with defendant, Charles Spellman. The first count of the complaint claimed a commission due for procuring a purchaser for the business, Chester County Fuel and Supply, Inc., and the second count, a commission due for procuring the same individual as tenant for land upon which that business was located. The case was pleaded and tried on the theory that the individual defendants were owners of the business, Chester County Fuel and Supply, Inc., without regard to the fact that the business was a corporate entity. At trial, a verdict was directed for defendant on the second count and is not the subject of any post-trial motion. On the first count, the jury rendered a verdict in favor of plaintiff and against all of defendants in the amount of $2,364. A point for binding instructions having been presented by defendants and declined, they have now filed a motion for judgment n. o. v., as well as a motion for a new trial.

The motion for judgment n. o. v. must be granted. Plaintiff is, of course, entitled to the benefit of every fact and inference of fact pertinent to the issues involved which may reasonably be deduced from the evidence: Jemison v. Pfeifer, 397 Pa. 81. Viewed in the light most favorable to plaintiff, the facts are these: Plaintiff, William E. Perry, a licensed real estate broker, of Malvern, Chester County, was orally engaged in May 1956 by defendant, Charles Spellman, to sell the business, Chester County Fuel and Supply, Inc., of which Spellman was an officer and shareholder, for a price of $40,000. The business was conducted at Exton in this county on real estate owned by Spellman and wife. In the latter part of May, Spellman called Perry by telephone and told him that he wanted him to sell the business, and during the conversation, Perry pointed out to Spellman that he should take into consideration among his selling expenses a five per cent

broker's commission. Spellman indicated that this was satisfactory.

Perry subsequently produced several prospects, and in late 1956 or early 1957 procured for defendants one Robert Nolan. Nolan then entered into a written agreement of sale dated February 1957 with defendant, Chester County Fuel and Supply, Inc., designated as seller, and defendant, Spellman, individually, as a party thereto. This agreement was admitted in evidence as plaintiff's exhibit 1. In paragraph 7 thereof, Spellman and the corporation warranted and represented certain facts pertaining, inter alia, to the quantity of retail sales of fuel oil sold by the corporation between January 31, 1956, and January 31, 1957, as well as the number of active customers as of the date of the agreement. The agreement further provided by paragraph 13 thereof: "In the event that, between the date of this agreement and closing, buyer is not satisfied as to the truth or correctness of seller's warranties set forth in Paragraph 7 hereof, he may at his option either terminate this agreement by notice in writing to the seller, in which event the $4000.00 down payment shall be returned to buyer by the escrow agent and all rights, obligations and liabilities of the parties shall cease and terminate, and this agreement shall become null and void, or buyer may proceed with closing with a proportionate reduction in the selling price if required hereunder." Also in the agreement, the corporation as seller agreed to pay plaintiff a commission of $2,000, representing five percent of the purchase price of $40,000, exclusive of inventory and accounts receivable, but as hereinbefore noted, plaintiff's commission was not claimed by virtue of the written instrument but as a result of the oral agreement aforesaid.

Defendant, Spellman, was satisfied with the agreement P-1 and Spellman's negotiations on behalf of the

corporation were, of course, ratified on behalf of the corporation by the execution of the agreement. No final closing, however, was ever made under the agreement because Nolan, the purchaser, indicated, under paragraph 13, his dissatisfaction with the truth and correctness of the warranties and elected to terminate rights and duties existing thereunder.

In support of the motion for judgment n. o. v., defendants contend that the written agreement P-1 was not such a contract as entitled plaintiff to recover his commission without regard to whether final closing was held. Upon reflection, we believe this is correct. This is not the ordinary case of a broker procuring a customer with whom the owner is willing and does contract, and where the commission is then earned without reference to the outcome of the sale.

Before a broker is entitled to recover his commission, he must show either, (a) that he procured for defendant a party with whom he was satisfied, and who actually contracted for the property at a price satisfactory to the owner, or, (b) that it was through his efforts that the purchaser was secured, to whom defendant, after he wrongfully took the matter out of the broker's hands, made the sale, or, (c) that even if he had not secured any binding contract from a proposed buyer, he had actually produced to his principal a purchaser able and willing to perform his part of the proposal so that the failure to complete an actual sale resulted alone from the fault or inability of the principal: S. V. Thompson Co. v. Goldman, 41 Pa. Superior Ct. 209, 218.

It is not disputed that plaintiff here produced for defendants a party, Nolan, with whom defendants, Spellman and the corporation, were satisfied, but the question remains whether Nolan actually contracted unconditionally for the property upon terms and at a price satisfactory to the owners. The writing P-1 is not

in dispute and contains no technical terms or words of art. Its interpretation, therefore, is a matter of law for the court: Schroeder Bros., Inc., v. Sabelli, 156 Pa. Superior Ct. 267, 273; Baldwin v. Magen, 279 Pa. 302.

While it was a valid contract of purchase and sale, paragraph 13 attached a condition precedent to the duty of the buyer to perform. Sellers had no right to require performance if buyer was not satisfied as to the truth or correctness of the warranties and so notified sellers. In that event, at buyer's election, all rights, obligations and liabilities of the parties ceased and terminated, and the agreement became null and void, or, buyer might proceed "with a proportionate reduction in the selling price." All that was required to terminate buyer's right to performance, or at seller's election, a renegotiation of the purchase price, was buyer's notice of dissatisfaction with the warranties. There is, therefore, applicable the principle established by a long line of cases beginning with Singerly v. Thayer, 108 Pa. 291, that under such a contract the question is not whether the buyer ought to be satisfied but whether he is satisfied, and the only limitation is that any dissatisfaction on his part must be genuine and not prompted by caprice or bad faith: Burke v. Daughters of the Most Holy Redeemer, Inc., 344 Pa. 579, 581; Smith v. Weaver, 41 Pa. Superior Ct. 253, 255. It is not disputed by plaintiff, Perry, and is implicit in his offer to prove by Mr. Runyon and Mr. Mink that the gallonage and the number of customers were not as warranted, that Nolan's dissatisfaction was genuine and not capricious.

Therefore, it clearly appears that, while plaintiff did procure a purchaser with whom defendants were satisfied, the contract entered into was not one under which the sellers could have unconditionally enforced performance. Nor was it an unconditional agreement to purchase at a price satisfactory to defendants or

at the price the broker was engaged to sell. Plaintiff has not, therefore, brought himself within the requirements of (a) hereinbefore set forth.

However, a binding contract is not essential where the party produced by the broker stands ready, willing and able to perform his part of the proposal and the failure to do so occurs through the fault or inability of the principal, such that the requirements of (c), hereinbefore set forth, have been met. While there is no question here that plaintiff produced Nolan, who was able to perform his part of the bargain, it, nonetheless, appears clear from plaintiff's uncontradicted evidence that Nolan was not ready and willing to perform, unless and until he had examined the books and records of the corporate defendant and was satisfied that they conformed to the warranties. It is undisputed as a fact that he was not satisfied, and, hence, was not ready and willing to proceed. It may be noted, incidentally, that neither party raised any question about the manner in which the notice of dissatisfaction required under paragraph 13 was given.

We have been cited no authority and our independent search has disclosed only one case in Massachusetts wherein the facts were substantially the same. However, we believe the conclusion reached herein is justified and consistent in principle with many Pennsylvania authorities. In Thompson Co. v. Goldman, 41 Pa. Superior Ct. 209, it was held that a broker will not be entitled to a commission where the purchasers' undertaking as evidenced by a written agreement of sale was conditioned on their ability to secure a loan, and there was no evidence to show whether the purchasers could have secured such a loan and thus become bound by an absolute contract to purchase.

In Business Realty Co. v. Schaffer, 99 Pa. Superior Ct. 175, judgment n. o. v. in favor of defendant and against plaintiff broker was affirmed where it ap-

peared that the agreement of sale procured by the broker for the sale of defendant's business conducted in a leased building was conditioned upon the purchaser obtaining consent of the landlord to an assignment and extension of the lease. Since the landlord refused to assign or extend the lease, the broker did not procure a purchaser willing to buy without condition or effect a sale unconditional in its terms. At page 177, the court said: "If the sale arranged by a broker is expressly conditioned on obtaining the consent of a third party to the transaction, his commissions are not earned or payable unless and until the condition is fulfilled, and the consent obtained; . . ." If this be so, it must follow that where a sale is conditioned upon the satisfaction of the buyer himself, no commission can be considered earned until that condition is met.

Further in accord on principle is McDonald v. Kimmell, 70 Pa. Superior Ct. 282. The broker-plaintiff there brought suit for commission which he contended was due as a result of having procured for defendant an agreement of sale for the exchange of certain property. Defendant had engaged plaintiff to secure for him a customer who would exchange coal lands for his two pieces of real estate in Pittsburgh. Plaintiff introduced defendant to one Snyder, who claimed to be the owner of 600 acres of coal land in West Virginia. An agreement to exchange these lands was executed which recited therein that Snyder's land contained several veins of coal having an average thickness of about five feet as evidenced by drilling records and geological reports in Snyder's possession. The agreement further provided that the deeds were to be delivered on or before a certain date when the deal was to be closed at plaintiff's office in Pittsburgh. It was

later discovered that no veins of coal to a thickness of five feet or any mineable thickness existed in Snyder's land and defendant rescinded the contract.

The lower court held that, while the nonexistence of coal might be a sufficient reason for the cancellation of the agreement between the principals, it was not a good reason to deny the commission to the broker who in good faith brought the purchaser to defendant who accepted him and agreed to pay the commission. Accordingly, judgment was entered in favor of plaintiff. The Supreme Court, however, reversed, holding, at pages 286 and 287, that, "The authorities determining the rights of the parties under such a statement of facts are somewhat conflicting, but there is a well-defined line of decisions in this and other states which holds that to entitle a broker to the commission called for by his contract of employment, he must produce a person who is ready, able and willing, both to accept and live up to the terms offered by his principal, 4 R. C. L. 307; and the burden of proof is upon the broker to establish the readiness, ability and willingness of the person proposed to comply with the offer of the principal. . . .

"A broker is never entitled to commission for unsuccessful efforts, and the risk of failure is wholly his. . . . It is not sufficient that the customer is ready and willing, but he must also have the ability to carry out the purchase or exchange. Nor is it sufficient that he is able, ready and willing, but on terms different from those prescribed."

In Stuart v. McEttrick, 242 Mass. 486, 136 N. E. 395, the Massachusetts case hereinbefore referred to, defendant owning a garage, told plaintiff, a real estate broker, that if he procured a purchaser who would pay $20,000 for the property he should receive a commission of $1,000. Plaintiff, after negotiations, succeeded

in effecting a proposed sale to one Carter on terms shown by a contract in writing between Carter and defendant. While the purchase price was $20,000, the contract provided "that the above mentioned premises will show a net profit of $600 . . . per month or approximately $7,000 a year," and that Carter "agrees to buy . . . provided the business is as represented. . . ." In a short opinion the court held that plaintiff, never having made a sale to a customer ready, able and willing unconditionally to buy for $20,000 and take the garage as he found it, a verdict for defendant was rightly ordered.

There is another reason why defendants' motion for judgment n. o. v. must be granted. Defendants contend that plaintiff has convicted himself of serving two masters and the failure to exercise perfect good faith in this matter. Upon examination of that general proposition, we find that there are two lines of cases derived therefrom. One involves the representation of, or employment by, both parties to the transaction with compensation paid to or sought by the broker from both sides: Cannell v. Smith, 142 Pa. 25; Everhart v. Searle, 71 Pa. 256; Rice v. Davis, 136 Pa. 439; Sarshik v. Fink, 292 Pa. 256; Lovett v. Goodman, 88 Pa. Superior Ct. 258, and Linderman v. McKenna, 20 Pa. Superior Ct. 409.

There was some, but very little, evidence of such dual representation, and this issue was submitted to the jury under instructions which were adequate as to this phase of the question. The jury found against defendants.

The other line of cases derived from the general rule hereinbefore noted presents a different problem, however. That is the broker's failure to disclose material facts bearing on the transaction: Raisch v. Cook, 306 Pa. 208; Pratt v. Patterson's Executors, 112 Pa. 475; Wilkinson v. McCullough, 196 Pa. 205; Allegheny By-

Product Co. v. Hillman and Sons Co., 275 Pa. 191; Greene v. Hawtof, 87 Pa. Superior Ct. 479.

Here, plaintiff, under cross-examination, admitted having, prior to the Nolan offer, submitted an offer by Malvern Holding Co., which was a subsidiary of Staats Oil Co., in which one Clarence Staats was an officer. When this was refused, plaintiff submitted a second offer by Clarence Staats, and that offer was made in the name of Perry's corporation, Real Estate Services, Inc., for the reason that Staats, being in the same type of business as defendants, did not want his name disclosed. Perry further admitted that he did not in either of these offers disclose Staat's interest. Finally, the Nolan offer, which became the subject of the agreement of sale, was admittedly initiated by Clarence Staats and M. Vincent Gilbert, the latter being the president and majority shareholder of Staats Oil Co. Nolan's down payment under the agreement was put up by his father-in-law, Mr. Gilbert, through Staats Oil Co. Plaintiff testified concerning the initiation and submission of the Nolan offer as follows:

"They (Staats and Gilbert) approached me about the sale. They were still interested, even though the original Malvern Holding Co. agreement had been refused.

"Q. As a result of that deal, you re-approached Mr. Spellman?

"A. Yes.

"Q. When?

"A. The latter part of December or early in January, I would say.

"Q. Was that with a specific offer?

"A. That was with a specific offer.

"Q. Was that with a drafted agreement to sell, which you have referred to?

"A. Yes, in the name of Robert Nolan.

"Q. In other words, the proposal that Mr. Staats and Mr. Gilbert made was submitted in the name of Robert Nolan?

"A. That is right.

"Q. Did Mr. Nolan ever meet Mr. Spellman to your knowledge?

"A. Not to my knowledge.

"Q. Did you?

"A. Did I meet with Mr. Nolan?

"Q. Yes.

"A. No.

"Q. All of your arrangements were with Mr. Staats and his associates?

"A. And Mr. Gilbert who was president of the Staats Oil Co.

"Q. Mr. Perry, did you tell Mr. Spellman who was the real party in interest in the Nolan agreement?

"A. I did not."

Although both Nolan and Gilbert, who were called as witnesses by plaintiff, testified that the business was being purchased for management and operation by Nolan for Nolan's benefit and that Gilbert himself, or through one of his corporations, was putting up the money in the form of a gift for his son-in-law, plaintiff cannot escape his own admissions.

A broker cannot act as agent in the sale of a property for both the vendor and the vendee, but, even if he is not acknowledged to be in fact the agent of both, he cannot act in the *interest* of both.

While it is not clear in this matter whether Nolan was or was not in fact a strawman, it is obvious from Perry's own testimony that he was on notice that this was a distinct possibility. This appears to bring the facts squarely in line with Raisch v. Cook, supra. At page 211 thereof, Mr. Justice Simpson said:

"It is conceded, of course, that if there was nothing more in the case than that plaintiffs did not know Carr was a straw man, they would not be deprived of their commissions because they did not tell defendant what they did not know (Greenblatt v. Fox, 59 Pa. Superior Ct. 53) ; but this does not excuse them from telling him what they did know: Rice v. Davis, 136 Pa. 439, 443; Sharshik v. Fink, 292 Pa. 256, 261; Mitchell v. Schreiner, 43 Pa. Superior Ct. 633, per Rice, P. J. As the jury did not believe them in the defense which they attempted, it is highly probable that, if called upon to determine whether or not they knew Carr was a straw man, it would have been decided that they did. *Aside from this, however, it is clear to us, from the facts which plaintiffs admit they knew*, that they certainly would have investigated the matter if they had themselves been the vendors. This being so, the utmost good faith, which is always exacted of brokers towards their customers, required them to disclose to defendant the relevant facts and circumstances which they did know, in order that he might act advisedly on the question of accepting the offer of purchase. Yet all of those facts and circumstances were withheld from defendant, and hence the strict, unbending rule of uberrima fides, always applied in this class of cases, defeats their claim." (Italics supplied.)

For this reason, as well, binding instructions for defendants should have been given.

In view of the foregoing, we deem it unnecessary to pass upon the reasons assigned in support of the motion for a new trial.

The motion for judgment n. o. v. is granted.

And now, June 6, 1960, judgment in favor of defendants, notwithstanding the verdict in favor of plaintiff, on the first count, is hereby entered.